EL PUEBLO DE PUERTO RICO, demandante y recurrido, *v.* JOSÉ A. MIRANDA ALVARADO, demandado y peticionario.

*Número:* CC-95-164          *Resuelto:* 2 de junio de 1997

*Cándida Valdespino Zapata,* de la *Sociedad para Asistencia Legal,* abogada del peticionario; *Jacqueline Novas Debién, Subprocuradora General,* y *Myriam Virola Santiago, Procuradora General Auxiliar,* abogadas de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

"El sistema democrático de vida se funda en la libertad con orden, no en el orden sin libertad o en la libertad que lleve al caos." *Pueblo v. Dolce,* 105 D.P.R. 422, 435 (1976). "Cuando se descuidan los medios, cuando se disminuyen los derechos fundamentales a nombre de un ansiado orden, lo que viene a perecer al cabo es la libertad y con ella la democracia que se quiso defender". *Pueblo v. Lebrón,* 108 D.P.R. 324, 328 (1979).

En el recurso de autos evaluamos la validez del consentimiento al registro y allanamiento prestado por un tercero, cuando el Estado no estableció su relación de autoridad con respecto al lugar allanado y aquel que en realidad poseía una expectativa de intimidad y manifestó expresamente su oposición a dicho registro y allanamiento.

El Ministerio Público presentó contra el peticionario una acusación por el delito de escalamiento agravado al imputarle reincidencia. Luego del acto de lectura de acusación, el acusado presentó una moción de supresión de evidencia para alegar que se efectuó el registro y allanamiento de su residencia sin una orden previa y sin que mediara un consentimiento válido. Solicitó la supresión de la declaración del agente Luis A. Torres González, así como de la confesión prestada. Celebrada la vista para la discusión de la moción,(1) el Tribunal de Primera Instancia, Sala

---

(1) En la vista sobre la moción de supresión de evidencia *"lo único a decidirse es la legalidad o razonabilidad del registro efectuado,* determinación que es revisable por ambas partes ante el tribunal apelativo por vía de *certiorari".* (Énfasis en el original.) *Pueblo v. Rivera Rivera,* 117 D.P.R. 283, 290 (1986). Al analizar una solicitud de supresión de evidencia, hay que determinar: (1) si el acusado que la solicita tiene capacidad para invocar el privilegio; (2) en ausencia de orden, si era posible al Estado obtenerla sin comprometer la eficacia del registro o la seguridad de sus agentes, y (3) la razonabilidad del registro. *Pueblo v. Ramos Santos,* 132 D.P.R. 363

Superior de Caguas (Hon. Rubén Torres Dávila, Juez) la declaró sin lugar. Mediante una resolución, el Tribunal de Circuito de Apelaciones (Hons. Amadeo Murga, Rivera Pérez y Pesante Martínez, Jueces) confirmó dicha determinación, pero con una opinión disidente de la Juez Pesante Martínez. Inconforme, el acusado acudió ante este Tribunal mediante la presentación del correspondiente recurso de *certiorari*. En auxilio de nuestra jurisdicción paralizamos los procedimientos pendientes ante el tribunal de instancia y concedimos un término al Estado para que mostrara causa por la cual no debía revocarse la resolución recurrida. Evaluada la comparecencia del Procurador General, no nos persuade; resolvemos según lo intimado.

## I

La prueba desfilada durante la vista para disponer de la moción consistió en los testimonios del agente Luis A. Torres González y la Sra. Vanessa Rodríguez Rivera. De la exposición narrativa de la prueba (E.N.P.) surgen los hechos que presentamos a continuación.

El 8 de marzo de 1995 el negocio Almacenes Coquí de Gurabo fue escalado. Como parte de la investigación, el agente Luis A. Torres González entrevistó al propietario de dicho negocio, quien le informó que conocía de un posible sospechoso, pues varias personas le habían indicado que de la residencia de éste sacaban mercancía con la etiqueta del establecimiento. Identificó al sospechoso como un sujeto apodado "El Borrachito", quien resultó ser el aquí peticionario. Según la declaración de Torres González, en horas de la mañana se dirigió acompañado del agente Figueroa hacia la residencia del acusado, pues a pesar de que la información hacía referencia a un sobrenombre, él conocía el verdadero y, además, sabía donde vivía. Una vez allí, tocó a la puerta de la cocina, salió el acusado y, acto se-

_____

(1992); *Pueblo v. Lebrón*, 108 D.P.R. 324 (1979).

guido, una mujer.(²) El agente les informó a ambos que estaba investigando un escalamiento y solicitó permiso para entrar a la casa. *El acusado se negó expresamente, le impidió la entrada y le dijo que ella no tenía nada que ver con los hechos. El agente continuó insistiendo con ella y ésta, alegadamente, lo autorizó a entrar.* Al lograr acceso al interior, observó en uno de los dormitorios varias cajas que contenían ropa y otros artículos marcados con la etiqueta de los almacenes. Acto seguido, arrestó a la pareja, recogió la mercancía y los llevó al cuartel, donde por primera vez le entregó al arrestado una hoja de papel que contenía las advertencias legales. Transcurrida una hora, el aquí peticionario escribió un párrafo al dorso del documento en el que aceptó la comisión de los hechos.

Durante el contrainterrogatorio, Torres González admitió que, a pesar de conocer con anticipación el nombre del acusado, que éste era el único sospechoso y que buscaba determinada mercancía, no gestionó previamente una orden de registro y allanamiento. Aceptó que al momento de la intervención desconocía que una mujer estuviese viviendo allí y reconoció que en el informe de arresto no consignó que ella le permitiera entrar a la residencia. A preguntas del magistrado declaró que tanto él como el agente Figueroa estaban armados y que el arma de este último se encontraba visible.

Por último, declaró la Sra. Vanessa Rodríguez Rivera, quien testificó que durante el 7 al 9 de marzo del 1995 convivió con el acusado en la residencia de éste. En su testimonio narró que al abrir la puerta los policías "entraron a la casa y le informaron que habían recibido una llamada de que habían escalado. Que al abrir la puerta el agente Figueroa se metió por allí pa' dentro". E.N.P., pág. 5. Admitió que en una declaración jurada previa había di-

---

(²) De la exposición narrativa de la prueba no surge la hora exacta en la cual el agente Torres González se presentó a la residencia del peticionario; sólo se hace constar que fue durante el día.

cho que los policías habían pedido permiso para entrar y que accedió a ello. En el contrainterrogatorio testificó que nunca autorizó a los agentes a entrar; que se sentía presionada, y que "[l]e dijeron que si declaraba contra José no le radicaban cargos a ella. Que delante de ella presionaron al imputado para que firmara el documento de advertencias y aceptara la responsabilidad para sacarla a ella". E.N.P., pág. 6. Por último, declaró que el acusado se negó en todo momento a que los agentes entraran a la casa y solicitó que le mostraran la orden de registro y allanamiento. Ante este trasfondo fáctico, analicemos la validez del registro y allanamiento efectuado en la residencia de Miranda Alvarado.

## II

■ El Art. II; Sec. 10 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1982, pág. 299, consagra la protección del individuo y sus pertenencias contra registros y allanamientos irrazonables.

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables.
>
> .    .    .    .    .    .    .    .
>
> Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse.
> Evidencia obtenida en violación de esta sección será inadmisible en los tribunales.

■ Esta garantía constitucional persigue tres (3) objetivos históricos: (1) proteger la intimidad y dignidad de los seres humanos; (2) amparar sus documentos y otras pertenencias, y (3) interponer la figura de un juez entre los funcionarios públicos y la ciudadanía para ofrecer mayor garantía de razonabilidad a la intrusión. *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197, 207 (1984). La protección

constitucional se refiere a aquella propiedad sobre la cual la persona tenga una expectativa de privacidad. *Pueblo v. Pérez Narváez*, 130 D.P.R. 618 (1992); *Pueblo v. Lebrón*, supra, pág. 331. El ámbito de la prohibición protege a todos, tanto al sospechoso o conocido ofensor como al inocente, y se extiende al lugar que sea objeto del registro. *Pueblo v. Acevedo Escobar*, 112 D.P.R. 770, 775–776 (1982).

Es principio firmemente establecido en nuestra jurisdicción que todo registro e incautación sin una orden judicial previa se presume inválido. *Pueblo v. González Rivera*, 100 D.P.R. 651, 656–657 (1972); *Pueblo v. Lebrón*, supra, pág. 328; *Pueblo v. Vázquez Méndez*, 117 D.P.R. 170 (1986); *Pueblo v. Malavé González*, 120 D.P.R. 470 (1988). Esta presunción está sujeta a limitadas y específicas excepciones.[3] Así, pues, una vez se demuestra que se efectuó un registro sin una orden previa, corresponde al Ministerio Público rebatir la presunción de invalidez mediante la presentación de prueba sobre las circunstancias especiales que permitieron actuar sin orden. *Pueblo v. Cruz Torres*, 137 D.P.R. 42 (1994); *Pueblo v. Ramos Santos*, 132 D.P.R. 363 (1992); *Pueblo v. Vázquez Méndez*, supra.

---

[3] Entre las excepciones reconocidas figuran: (1) registro y allanamiento de estructuras abandonadas, *Pueblo v. Eurasquín Martínez*, 96 D.P.R. 1 (1968); (2) registro de evidencia abandonada o arrojada por la persona, *Pueblo v. Saura Gómez*, 90 D.P.R. 801 (1964); *Pueblo v. Ortiz Martínez*, 116 D.P.R. 139 (1985); *Pueblo v. Ortiz Zayas*, 122 D.P.R. 567 (1988); (3) registro incidental al arresto, cuando el área registrada está al alcance inmediato del sujeto y el propósito es ocupar armas o instrumentos que puedan ser utilizados por la persona arrestada para agredir a los agentes del orden público, o para intentar una fuga o evitar la destrucción de evidencia; *Pueblo v. Sosa Díaz*, 90 D.P.R. 622 (1964); *Pueblo v. Costoso Caballero*, 100 D.P.R. 147 (1971); *Pueblo v. Pacheco Báez*, 130 D.P.R. 664 (1992); (4) cuando la evidencia se encuentra a plena vista, *Pueblo v. Dolce*, 105 D.P.R. 422 (1976); (5) campo abierto, *Pueblo v. Bogard*, 100 D.P.R. 565 (1972); *Pueblo v. Lebrón*, supra, pág. 328; (6) cuando circunstancias de emergencia así lo requieran, *Pueblo v. Rivera Collazo*, 122 D.P.R. 408 (1988); (7) registro tipo inventario, que sea realizado para salvaguardar el contenido del vehículo y proteger a la Policía así como al dueño del vehículo, *Pueblo v. Rodríguez Rodríguez*, 128 D.P.R. 438 (1991); *Pueblo v. Sánchez Molina*, 134 D.P.R. 577 (1993); (8) cuando la evidencia es obtenida durante el transcurso de una persecución, *Pueblo v. Riscard*, 95 D.P.R. 405 (1967); (9) evidencia obtenida durante un registro administrativo en una actividad altamente reglamentada por el Estado, *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197, 207 (1984), y (10) cuando el registro es consentido directa o indirectamente, *Pueblo v. Falú Martínez*, 116 D.P.R. 828 (1986); *Pueblo v. Narváez Cruz*, 121 D.P.R. 429, 436 (1988).

■ Una de las excepciones reconocidas a la protección constitucional es cuando media el consentimiento para el registro. *Pueblo en interés menor N.O.R.,* 136 D.P.R. 949 (1994). Sobre el particular hemos resuelto que sólo el titular del derecho puede válidamente renunciar a éste. *Pueblo v. Narváez Cruz,* 121 D.P.R. 429 (1988); *Pueblo v. Castro Rosario,* 125 D.P.R. 164 (1990). Esta renuncia puede ser mediante consentimiento expreso o tácito, enfatizándose en los factores siguientes: (1) si ha habido fuerza o violencia; (2) si el registro se efectuó después de un arresto, y (3) si se encontraban presentes otras personas. *Pueblo v. Acevedo Escobar,* supra, pág. 777. No obstante, para que el consentimiento sea válido es indispensable que sea prestado por quien tenga la autoridad para prestarlo y que se haga de manera voluntaria sin que medie coacción directa o indirecta. *Pueblo v. Narváez Cruz,* supra, pág. 436.

■ Recientemente, al examinar la validez del consentimiento prestado para realizar un registro resolvimos que ello es una cuestión de hecho que se determina haciendo un examen cuidadoso de la totalidad de las circunstancias que rodean el caso. *Pueblo v. Santiago Alicea I,* 138 D.P.R. 230 (1995). Allí reconocimos que entre los elementos que se han de considerar se encuentra el ambiente en el cual se presta el consentimiento, así como las características personales de quien consiente. Al referirnos a éstos aspectos expresamos:

En cuanto a las características personales hay que examinar la edad; la inteligencia promedio; la educación; si la persona estaba intoxicada o bajo la influencia de drogas al momento de prestar el consentimiento; si la persona consintió luego de ser informada de su derecho de rehusarse a consentir o habérsele dado las advertencias "Miranda"; y si había sido arrestado anteriormente y, por lo tanto, tenía conocimiento de las protecciones que provee el sistema legal a los sospechosos de un delito. Véase *U.S. v. Chaidez,* 906 F.2d 377 (1990). *Pueblo v. Santiago Alicea I,* supra, pág. 237.

De otra parte, en cuanto al ambiente, expusimos:

> En cuanto al ambiente en el que se prestó el consentimiento, hay que considerar si la persona que consintió fue amenazada, intimidada físicamente o maltratada por la Policía; si descansó en promesas o representaciones falsas de la Policía y si estaba en un lugar público o aislado. Por otro lado, si la persona inicialmente no permitió el registro, pero posteriormente lo autorizó, hay que determinar si fue obtenido luego de que la Policía amenazó al ciudadano diciéndole que si no consentía obtendrían una orden de registro y entrarían de todas formas. *Pueblo v. Santiago Alicea I*, supra, pág. 237.

Esta norma no es absoluta. Nuestra jurisprudencia ha reconocido que, en determinadas situaciones y ante la ausencia del titular del derecho, un tercero puede prestar válidamente su consentimiento para el registro de una propiedad. A manera de ejemplo, hemos sostenido la validez del consentimiento del padre para el registro de la habitación de un hijo menor que no pagaba renta, *Pueblo ex rel. F.J.M.R.*, 111 D.P.R. 501 (1981), y el consentimiento de la hermana del acusado para el allanamiento de la residencia de éste, *Pueblo v. Rivera Romero*, 83 D.P.R. 471, 481 (1961).

En *Pueblo v. Narváez Cruz*, supra, este Tribunal aclaró la controversia existente sobre la validez del consentimiento prestado por un invitado o visitante de una residencia, a que se efectúe un registro o allanamiento en ésta. Allí expresamos, conforme al criterio establecido por el Tribunal Supremo de Estados Unidos en *United States v. Matlock*, 415 U.S. 164 (1974), que para consentir válidamente al registro no se requiere que la persona que presta el consentimiento posea un interés legal en la propiedad. Lo importante es que posea "autoridad común u otra relación suficiente respecto a la propiedad que habrá de ser registrada". (Traducción nuestra.) Íd., pág. 171. El concepto "autoridad común ... con respecto a la propiedad" fue interpretado por dicho Tribunal en el citado caso como que "depende del uso mutuo de la propiedad por personas que

generalmente *tienen un control conjunto* [con respecto a la propiedad] en cuanto a varios propósitos, de tal forma que es razonable reconocer que cualquiera de los cohabitantes tiene autoridad, por derecho propio, para permitir la inspección y que los otros asuman el riesgo de que uno de ellos permita que el área común sea registrada". (Traducción y énfasis nuestros.) Íd., pág. 171 esc. 7. Véase, además, *Pueblo v. Narváez Cruz*, supra, pág. 437.

También reconocimos en *Pueblo v. Narváez Cruz*, supra, que al amparo de la doctrina de "autoridad aparente", los agentes del orden público podían con validez confiar en el consentimiento prestado por un tercero, aunque posteriormente resultara que no tenía autoridad común, si al momento de la intervención aparentaba tenerla. Expresamos que en esta clase de situaciones la Policía está en la obligación de indagar razonablemente con respecto a la autoridad de la persona que presta el consentimiento al respecto. Añadimos que, "[c]omo cuestión de hecho, se desprende de la jurisprudencia relativa a la doctrina de autoridad aparente, que siempre ha habido una manifestación de la persona que presta el consentimiento a los efectos de que posee la autoridad para permitir el registro, o la Policía ha poseído algún tipo de información previa con respecto a dicha autoridad". (Escolio omitido.) Íd., págs. 441–442. Concluimos entonces que son dichas manifestaciones o información previa *lo que da base a la buena fe de los agentes de la Policía y les permite llegar a una creencia o conclusión razonable de que la persona que representa tener la autoridad para permitir un registro de verdad la tiene*". (Énfasis suplido.) Íd., pág. 442.

Finalmente, dejamos claramente expuesta la norma de la manera siguiente:

En aras de la protección de los derechos constitucionales envueltos en este tipo de situaciones, cuando se invoca la doctrina de la autoridad aparente, pretendiéndose que los agentes de la Policía descansen en las representaciones de autoridad de una

determinada persona para consentir a un registro, deben observarse rigurosamente los requisitos de la misma. Resolvemos, en su consecuencia, que cuando los agentes de la Policía no posean información previa sobre la autoridad de una persona para consentir a un registro, producto dicha información de una razonable investigación, *éstos deberán indagar al respecto en el momento de solicitar el consentimiento, pidiéndole a la persona que se identifique e inquiriéndole sobre si es la dueña de la propiedad o la relación que tiene con la misma.* (Énfasis en el original.) *Pueblo v. Narváez Cruz*, supra, pág. 443.

Con posterioridad a dicha decisión, el Tribunal Supremo federal resolvió en *Illinois v. Rodríguez*, 497 U.S. 177, 188–189 (1990), sobre el aspecto de "autoridad aparente", lo siguiente:

> ... what we hold today does not suggest that law enforcement officers may always accept a person's invitation to enter premises. Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry. As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment ... 'warrant a man of reasonable caution in the belief' " that the consenting party had authority over the premises? *Terry* v. *Ohio*, 392 U.S. 1, 21–22 (1968). If not, the warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

## III

Un análisis integral de la totalidad de las circunstancias, dentro de las cuales ocurrió el registro y allanamiento de la residencia del acusado, nos persuade a revocar la sentencia del Tribunal de Circuito de Apelaciones y a decretar la supresión de la evidencia obtenida. El examen de la prueba presentada ante el Tribunal revela que el Estado no cumplió con el requisito de demostrar la autoridad común de quien consintió, elemento indispensable cuando se pretende la validez del consentimiento al registro prestado

por un tercero. Por el contrario, la señora Rodríguez Rivera resultó ser una visitante temporera que sólo estuvo allí durante dos (2) días.

Dichas circunstancias tampoco justificaban a una persona razonablemente cauta a creer que esta señora tuviera suficiente autoridad para permitir válidamente la entrada de los agentes del Estado a la residencia del peticionario. Resulta altamente reveladora la declaración del agente Figueroa a los efectos de que al momento de dirigirse al lugar desconocía que allí residiese alguien más que el acusado. Así lo confirma el señor Procurador General en su informe, en el cual reconoce que los agentes tampoco indagaron, al momento de intervenir, con respecto al control o la autoridad de la señora Rodríguez Rivera sobre la propiedad que sería registrada. Informe, pág. 18. Ello demuestra el total desconocimiento de los agentes del Estado en cuanto al significado de la presencia de ésta en el hogar del peticionario y el efecto, si alguno, que tuviera la supuesta autorización de tal señora para el allanamiento de dicha residencia. Así pues, ante la negativa expresa de Miranda Alvarado a consentir al registro de su residencia, y la ausencia de autoridad común o aparente de la señora Rodríguez Rivera para prestar dicho consentimiento, la única alternativa válida que tenían los agentes era la de obtener una orden judicial para el allanamiento. En las circunstancias en que se desarrolló su intervención, éstos tuvieron suficiente oportunidad para obtener anticipadamente dicha orden. No resultaba oneroso ni perjudicial obtenerla. Por el contrario, la información ofrecida por el propietario del negocio escalado, la cual incluía la identidad del responsable, constituía evidencia suficiente para la expedición de ésta. No lo hicieron.

Ante estas circunstancias, estamos obligados a decretar la supresión de los frutos del registro, incluyendo la confesión prestada mientras el peticionario se encontraba bajo arresto como consecuencia directa de los bienes encontra-

dos dentro de la residencia allanada. No hay duda de que la confesión obtenida fue el resultado de la confrontación directa del acusado con la prueba ilegalmente obtenida, inadmisible por mandato constitucional. Así lo confirman factores como el poco tiempo transcurrido entre la incautación de la evidencia y el momento cuando el peticionario hizo la confesión (*una hora*), el lugar donde se obtuvo la confesión (*el cuartel*) y el hecho de que el individuo *se encontraba bajo arresto*. Expuesto este trasfondo fáctico, resulta forzoso suprimir dicha declaración. *Fahy v. Connecticut*, 375 U.S. 85 (1963); *Pueblo v. Rodríguez Rivera*, 91 D.P.R. 456 (1964). Véase, además, O. Resumil de Sanfilippo, *Práctica jurídica de Puerto Rico: derecho penal*, New Hampshire, Ed. Equity, 1990, T. I, págs. 304–313.

En su lucha contra la delincuencia, los agentes del Estado no pueden sucumbir al relajamiento de los procesos investigativos conforme a los requisitos establecidos por ley y las garantías constitucionales que cobijan a todo ciudadano. Es un axioma rector que el derecho a la intimidad cobra mayor importancia cuando el Estado interviene en uno de los lugares más íntimos del ser humano, su morada, cuya naturaleza exige mayor rigurosidad cuando se pretende intervenirlo. Véanse: *Pueblo v. Turner Goodman*, 110 D.P.R. 734 (1981); *E.L.A. v. Hermandad de Empleados*, 104 D.P.R. 436 (1975). Cfr. *Pueblo v. Malavé González*, supra; *Pueblo v. Acevedo Escobar*, supra, pág. 777.

El resultado al que hemos llegado en nada impide que el Estado demuestre la culpabilidad del acusado más allá de duda razonable mediante la presentación de prueba independiente y distinta a la suprimida. *Pueblo v. Rivera Rivera*, 117 D.P.R. 283, 290 (1986); *Pueblo v. Rodríguez Rivera*, supra, pág. 463.

Por los fundamentos antes expuestos, *se expedirá el auto solicitado, se dictará sentencia para revocar aquella dictada por el Tribunal de Circuito de Apelaciones, se de-*

*cretará la supresión de la evidencia obtenida en la residencia del peticionario, así como la confesión de éste, y se devolverá el caso para la continuación de los procedimientos en forma compatible con lo aquí resuelto.*

El Juez Asociado Señor Rebollo López concurrió con el resultado con una opinión escrita. Los Jueces Asociados Señores Negrón García y Hernández Denton concurrieron con el resultado sin opinión escrita.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

Recientemente nos vimos obligados a disentir de la mayoría de los integrantes del Tribunal,[1] la cual resolvió que *no* procedía la supresión de una evidencia delictiva ocupada por agentes del orden público al diligenciar una orden administrativa de confiscación o incautación, expedida por el Secretario de Justicia de Puerto Rico, contra una residencia; *orden administrativa de confiscación que era consecuencia directa de la ocupación de evidencia delictiva obtenida en un registro anterior de dicha residencia, registro original que fue declarado ilegal por este Tribunal.*

Al así hacerlo, la mayoría rechazó nuestra contención a los efectos de que consideraciones de orden público, básicas a nuestro sistema democrático de gobierno, impiden que se le permita al Estado sostener la legalidad de una confiscación civil a base de evidencia previamente suprimida en un procedimiento criminal relacionado, por ser la misma producto de un registro y allanamiento ilegal.

Sostuvimos, además, en dicho disenso —citando al Prof.

---

[1] El Juez Asociado Señor Hernández Denton se unió a nuestro disenso.

Ernesto L. Chiesa(²)— que la llamada "regla de exclusión" se extiende a "evidencia derivativa" que ha sido ocupada como "fruto" de evidencia primaria que ha sido obtenida ilegalmente, esto es, "a otra evidencia cuyo origen está vinculado estrechamente a la evidencia obtenida originalmente en violación de la protección constitucional". Expresamos entonces, y repetimos en el día de hoy, *que como resulta obvio, estamos hablando de la llamada doctrina del "fruto del árbol ponzoñozo"*. Véase nuestra opinión disidente emitida en *Pueblo v. Negrón Martínez I*, 143 D.P.R. 1, 16 (1997).

*No* tuvimos éxito. *No* pudimos convencer a una mayoría de los integrantes del Tribunal de la corrección de la posición asumida entonces por nosotros; esto es, de que se estableciera en nuestra jurisdicción, de manera diáfana, la doctrina del "fruto del árbol ponzoñozo".

De manera sorprendente, en el día de hoy esa misma mayoría endosa la opinión que en el presente recurso suscribe el Hon. José A. Andréu García, Juez Presidente de este Tribunal. Dicha acción nos sorprende por cuanto en la opinión que hoy se emite precisamente se establece como norma lo que se descartó en el citado caso de *Pueblo v. Negrón Martínez I*, ante. Se expresa, en lo pertinente, en el día de hoy que:

> Ante estas circunstancias, *estamos obligados a decretar la supresión de los frutos del registro, incluyendo la confesión prestada mientras el peticionario se encontraba bajo arresto como consecuencia directa de los bienes encontrados dentro de la residencia allanada.* No hay duda de que la confesión obtenida fue el resultado de la confrontación directa del acusado con la prueba ilegalmente obtenida, *inadmisible por mandato constitucional*. Así lo confirman factores como el poco tiempo transcurrido entre la incautación de la evidencia y el momento cuando el peticionario hizo la confesión (*una hora*), el lugar

---

(²) E.L. Chiesa Aponte, *Derecho procesal penal de Puerto Rico y Estados Unidos*, 1ra ed., Colombia, Ed. Forum, 1991, Vol. I, Cap. 6, pág. 317.

donde se obtuvo la confesión (*el cuartel*) y el hecho de que el individuo *se encontraba bajo arresto.* Expuesto este trasfondo fáctico, resulta forzoso suprimir dicha declaración. *Fahy v. Connecticut*, 375 U.S. 85 (1963); *Pueblo v. Rodríguez Rivera*, 91 D.P.R. 456 (1964). Véase, además, O. Resumil de Sanfilippo, *Práctica jurídica de Puerto Rico: derecho penal*, New Hampshire, Ed. Equity, 1990, T. I, págs. 304–313. (Énfasis suplido y en el original.) Opinión mayoritaria, págs. 368–369.

Cuando menos, celebramos que el Tribunal haya tenido la oportunidad de corregir el terrible error que cometió el pasado 30 de abril de 1997 y establecer en nuestra jurisdicción la norma jurisprudencial correcta y procedente. Ello, naturalmente, le sirve de poco consuelo a los acusados en el anterior caso; situación que resulta ser lamentable y que no deja de constituir una injusticia.