Opinión concurrente emitida por el
Juez Asociado Señor Rivera García.
El 9 de diciembre de 2011 dictamos la opinión Pueblo v. Fernández Rodríguez, 183 DPR 770 (2011), donde resolvimos que no podían admitirse en evidencia partes del testimonio que brindó un agente de la Policía, porque involucraba materia privilegiada cobijada por el privilegio abogado-cliente. Así también, ordenamos la supresión de la evidencia real producto del testimonio. El 28 de diciembre de 2011, el Procurador General presentó ante esta Curia una moción de reconsideración en la que argumenta que erramos al excluir esa evidencia y al aplicar en este caso la doctrina del “fruto del árbol ponzoñoso”.
Rexaminada la controversia, una mayoría de este Tribunal colige que erramos al excluir los frutos de la divulgación de la comunicación privilegiada porque el Estado no los obtuvo de manera ilegal. Luego de justipreciar el asunto, concurrimos con ello, no obstante, entendemos necesario aclarar ciertos extremos.
*186 I
A. La Opinión en Reconsideración que hoy se emite transcribe fielmente los antecedentes fácticos de este caso. Sin embargo, en aras de destacar la controversia medular del asunto que estuvo ante nuestra consideración, pasamos a exponer los detalles pertinentes a la contención neurálgica que hoy se reconsidera.
Allá para el 1 de noviembre de 2006, el Sr. Waldemar Fernández Rodríguez (señor Fernández) acudió al cuartel general de la Policía acompañado por su abogado, el Ledo. Luis Carbone (licenciado Carbone), y de un amigo. Una vez allí, el licenciado Carbone le indicó al sargento que los entrevistó —Sgto. José Curbelo Ortiz— que el señor Fernandez no haría declaración alguna, ya que se encontraba muy nervioso.(1) Poco tiempo después, el agente Curbelo procedió a leerle las advertencias pertinentes al señor Fernandez.(2) En específico, le indicó que tenía “derecho a permanecer callado, (a que) todo lo que di(jera) podr(ía) ser usado en su contra, [...] (a) estar representado por un abogado [...] y a no declarar”.(3) Luego de esto, el licenciado Carbone, quien estuvo presente cuando le hicieron las advertencias de rigor al señor Fernández, nuevamente le indicó al agente Curbelo que su cliente no declararía en esos momentos.(4) Igualmente lo reconoció ese agente durante el interrogatorio que se le practicó en la vista preliminar, cuando reconoció que el señor Fernández invocó su derecho a no declarar. (5)
En vista de que el licenciado Carbone “se mantuvo diciendo (le) que su cliente estaba nervioso y que no iba a *187 prestar declaración jurada en esos momentos”,(6) el agente Curbelo inquirió a ese abogado sobre “dónde se encontraba el arma que había utilizado su cliente con relación a es(os) hechos”.(7) En respuesta, el licenciado Carbone le ofreció información sobre su ubicación. Acto seguido, el agente Curbelo informó ese dato a una agente que se encontraba en la escena del crimen. Minutos después, esa agente contactó vía telefónica al agente Curbelo y le requirió pistas adicionales para poder dar con el paradero de las municiones y el cargador del arma.(8) Ante ello, el agente Curbelo comunicó a la agente con el licenciado Carbone, quien finalmente le indicó a esta última el lugar preciso dónde se encontraba la evidencia que intentaban recuperar.
Así las cosas, tanto el testimonio del agente Curbelo como la evidencia ocupada según la información que el licenciado Carbone le ofreció a este, se presentó como evidencia contra el señor Fernández. Ante ello, este solicitó la supresión alegando que eran producto directo de una comunicación privilegiada. El Tribunal de Primera Instancia declaró “no ha lugar” esa petición, determinación que confirmó el foro apelativo.
Llegada la controversia a esta Curia, el señor Fernández alegó en su recurso de certiorari que “la actuación del Estado vulneró (su) derecho contra la autoincriminación, el privilegio abogado-cliente y el derecho al debido proceso de ley.” (Enfasis nuestro). Véase Alegato del peticionario, pág. 7. Indicó que resultaba “insostenible que, por un lado, se (le garantizara) el derecho contra la autoincriminación, y por otro lado, se requiera del representante legal de la persona información que está íntimamente entrelazada a tal derecho”. íd., pág. 20. Sostuvo que aplicaba a su caso la normativa atinente a la obtención de manifestaciones in *188 criminatorias involuntarias por parte del Estado. íd., pág. 23. Así, en Pueblo v. Fernández Rodríguez, supra, resolvimos la controversia y ordenamos que se suprimieran el testimonio del agente Curbelo que involucraba materia privilegiada, así como el arma, el cargador y las municiones por ser producto de ese testimonio.
Inconforme, el Procurador General acude nuevamente a este Tribunal mediante una moción de reconsideración parcial que se circunscribe a señalar que incidimos al ex-cluir la evidencia real. Esto pues, sostiene que el Estado no cometió actuación ilegal alguna. El asunto de principal ante nuestra consideración es, si atendiendo específicamente las contenciones del señor Fernández, la exclusión de la comunicación privilegiada —en el contexto de la relación abogado-cliente— debió conllevar automáticamente la exclusión de sus frutos evidenciarios. Reconsideramos este particular, recordando lo que antes hemos expresado, en cuanto a que “el ‘temor de que se nos tache de inconsistentes no debe impedir que reconsideremos’ la actuación, o decisión, errónea que hayamos emitido en un caso en particular”. Lebrón v. Díaz, 166 DPR 89, 90 (2005), Reyes Coreano v. Director Ejecutivo, 110 DPR 40, 42 (1980).
II
A. La evidencia derivativa es aquella que se ocupa como “fruto” de una evidencia primaria. Ese concepto se utiliza generalmente para identificar aquella evidencia secundaria que se deriva de una evidencia ilegalmente obtenida.(9) Pueblo v. Miranda Alvarado, 143 DPR 356, 371 (1997).
*189 Así pues, en la tramitación de los casos criminales existen varias razones por las cuales se puede excluir evidencia de esta índole.(10) Estas instancias son las siguientes: cuando la exclusión está estatuida en alguna ley estatal; cuando aplica la regla de exclusión de evidencia que se deriva de la doctrina conocida como “fruto del árbol ponzoñoso”, o; ante la existencia de alguna ley federal relacionada a ese asunto. Véase, en general, J.J. Dalessio, Evidentiary Privileges and the Exclusion of Derivative Evidence: Commentary and Analysis, 26 San Diego L. Rev. 625 (1989).
Es preciso señalar que la exclusión de evidencia que se hace bajo el supuesto de que el Estado cometió alguna actuación ilegal, lleva en sí un propósito intrínsecamente disuasivo, pues los remedios para excluir evidencia son una “medicina fuerte” que normalmente se reserva para las instancias en que ocurran violaciones constitucionales. U.S. v. White, 879 F.2d 1509, 1513 (7mo Cir. 1989). Por tal razón, el Tribunal Supremo federal ha enfatizado que:
[...] Fundamental to suppressing fruits is a deterrence rationale that the derivative evidence should generally be suppressed to deter the government from future violations of constitutional rights. R.P. Mosteller, Admissibility of fruits of breached evidentiary privileges: The importance of adversarial fairness, party culpability, and fear of immunity, 81 Wash. U. L.Q. 961, 976 (2003). Véanse: U.S. v. Leon, 468 US 897, 908-913 (1984); U.S. v. White, supra.
Según indicamos, una de las instancias en que procede excluir evidencia ocupada por el Estado es cuando aplica la doctrina del “fruto del árbol ponzoñoso”. La opinión en reconsideración que hoy se emite correctamente recoge el tratamiento jurisprudencial atinente esta doctrina. En esencia, esta doctrina, con sus excepciones, encuentra su *190 origen en la jurisprudencia federal norteamericana. Desde principios de siglo el Tribunal Supremo federal la adoptó al interpretar la Cuarta Enmienda de la Constitución de Estados Unidos, con el propósito de lograr un balance adecuado entre el “interés de encausar a los transgresores del orden social y el de disuadir a los oficiales que protegen y mantienen el orden público de recurrir a medios o procedimientos ilegales, violentando de esa manera los derechos constitucionales de cada ciudadano”. (Énfasis suprimido). Opinión disidente del Juez Asociado Señor Rebollo López en Pueblo v. Negrón Martínez I, 143 DPR 1, 16 (1997). Véase Silverthorne Lumber Co. v. U.S., 251 US 385 (1920).(11)
Según señala el profesor Ernesto L. Chiesa, la “regla de exclusión”, que establece la doctrina del fruto del árbol ponzoñoso, se extiende a “evidencia derivativa” que ha sido obtenida como “fruto” de evidencia primaria obtenida ilegalmente. E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1991, Vol. I, pág. 317; Pueblo v. Negrón Martínez I, supra. Esto es, “a otra evidencia cuyo origen está vinculado estrecha *191 mente a la evidencia obtenida originalmente en violación de la protección constitucional”. Chiesa Aponte, op. cit. En cuanto a esto, conviene resaltar lo que nos instruye el tratadista La Fave, tal como se reseña en la Opinión en Reconsideración de autos, en cuanto a que “la doctrina del ‘fruto del árbol ponzoñoso’ no se limita a los casos en que se ha violado la Cuarta Enmienda, [sino que] también se ha utilizado cuando han ocurrido otras violaciones constitucionales, como las ruedas de detenidos y las confesiones obtenidas en violación a los derechos constitucionales”. Opinión en reconsideración, págs. 174—175, citando a 6 La Fave, Search and Seizure: A treatise on the fourth amendment, Sec. 11.4, pág. 257 (2004). En ese sentido, la regla de exclusión también se ha aplicado cuando se obtiene evidencia secundaria fruto de violaciones a limitaciones nó constitucionales, pero que están estatuidas legalmente. La Fave, supra.
Destacamos que es acertada la discusión de la opinión mayoritaria en reconsideración, en cuanto a que para que aplique la referida regla de exclusión es necesario que el Estado incurra en alguna actuación estatal ilegal o inconstitucional al obtener la pieza evidenciaría que se intenta excluir. A pesar de esto, entendemos que sí podrían suscitarse situaciones en las cuales sería procedente excluir los frutos evidenciarios de la divulgación de una comunicación privilegiada —y aclaramos— en el contexto de la relación abogado-cliente.
B. Si bien es cierto que el privilegio abogado-cliente no está investido de cualidad constitucional alguna, en casos criminales existen situaciones en que este estará estrechamente relacionado con derechos constitucionales fundamentales de un sospechoso o acusado. Ante esa situación particular, se ha planteado que la violación del privilegio abogado-cliente debe tratarse como se tratan las violaciones constitucionales cuando ese privilegio suplementa algún derecho de raigambre constitucional, como lo sería el *192 derecho a representación legal adecuada que surge de la Sexta Enmienda de la Constitución federal, el derecho a no autoincriminarse de la Quinta Enmienda y el debido proceso de ley que emana de la Decimocuarta Enmienda.(12) Véanse: U.S. v. Neill, 952 F. Supp. 834, 839 (D. DC. 1997); B.P. Saul, Constitutional and Evidentiary Issues, 2 Attorney-Client Privilege in the U.S. Sec. 10:10, Cap. 10 (2012).
Desde hace décadas, se propuso que el privilegio abogado-cliente es una garantía contra el menoscabo al derecho contra la autoincriminación y el derecho constitucional a una representación legal adecuada. Véase Nota, The Attorney Client Privilege: Fixed rules, balancing, and constitutional entitlement, 91 Harv. L. Rev. 464, 485 (1977). Esto, ya que el privilegio abogado-cliente, a pesar de que no se ha elevado a rango constitucional, es clave para ejercer tales prerrogativas constitucionales. U.S. v. Neill, supra; U.S. v. White, supra. Por lo tanto, es correcto concluir que el hecho de que el privilegio abogado-cliente no sea de índole constitucional, no implica que el Estado pueda ganar acceso a comunicaciones privilegiadas mediante conducta que mine derechos constitucionalmente reconocidos. Véase E.D. Macarthur, The Search and seizure of privileged attorney-client communications, 72 U. Chi. L. Rev. 729 (2005). En ese sentido, precisa examinar si procede excluir los frutos de la divulgación de una comunicación cobijada por el privilegio abogado-cliente, considerando la normativa atinente a la exclusión de evidencia.
Según indicamos, el privilegio abogado-cliente está ligado a los derechos constitucionales contra la autoincriminación y el derecho a asistencia de abogado. El texto de la Sexta Enmienda de la Constitución federal establece que en todas las causas criminales, el acusado gozará, entre otros, del derecho a la asistencia de un abogado para su defensa. Enmienda VI, Const. EE. UU., LPRA, Tomo 1, ed. *193 2008. Según la aludida disposición, el derecho a asistencia de abogado se activa luego de la iniciación de los procedimientos acusatorios de manera formal. Kirby v. Illinois, 406 US 682, 689 (1972). Por otra parte, cuando se ha centralizado una investigación sobre un individuo, a este le cobijan los derechos que emanan de la Quinta Enmienda de la Constitución de Estados Unidos, entre ellos, el derecho a asistencia de abogado para asegurar su derecho a la no autoincriminación. Véase Chiesa Aponte, op. cit., pág. 66.
En Puerto Rico, la Sec. 11 del Art. II de la Constitución, supra, garantiza que en todos los procesos criminales, el acusado disfrutará, entre otros, del derecho a la asistencia de abogado. Art. 2, Sec. 11, Const. PR, LPRA, Tomo 1, ed. 2008, pág. 343. Esta prerrogativa también se ha consagrado como parte fundamental de la cláusula del debido proceso de ley. Además, la representación debe ser adecuada. Pueblo v. Ortiz Couvertier, 132 DPR 883 (1993). De esta forma, hemos reconocido el derecho de un acusado al disfrute de asistencia legal en la etapa investigativa cuando esta toma carácter acusatorio, en el acto de lectura de acusación, durante el juicio, al dictarse sentencia y en la fase apelativa. íd.(13) Véase Miranda v. Arizona, 384 US 436 (1966).(14)
*194 Es meritorio apuntar que el derecho constitucional a asistencia de abogado claramente alberga en sí la protección de la confidencialidad de las comunicaciones entre el acusado y su representante. United States v. Henry, 447 US 264, 295 (1980), opinión disidente del Juez Rehnquist. Así pues, el concepto relación abogado-cliente se interseca con la Quinta y Sexta Enmienda en la medida en que estas requieren una representación legal adecuada: ya sea durante un interrogatorio al sospechoso, previo a la iniciación del procedimiento criminal formal o luego de comenzado este. Ante ese escenario, una de las instancias en que puede ocurrir una vulneración al derecho a una representación legal adecuada es cuando el Estado interviene ilegalmente en la relación abogado-cliente para obtener información privilegiada y utiliza esa información para obtener evidencia en contra del imputado. Véase United States v. Neil, supra. En U.S. v. Lin Lyn Trading, Ltd., 925 F. Supp. 1507, 1517 (D. Utah 1996),(15) se dijo lo siguiente:
[...] intentional intrusion into the attorney-client relationship constitutes a direct interference with the Sixth Amendment rights of a defendant, and because a fair adversary proceeding is a fundamental right secured by the Sixth and Fourteenth Amendments, we believe that absent a countervailing state interest, such an intrusion must constitute a per se violation of the Sixth Amendment. In other words, we hold that when the state becomes privy to confidential communications because of its purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed. (Enfasis suplido).
Por otro lado, la intrusión del Estado en la relación abogado-cliente puede ser de tal magnitud que también configure una violación al debido proceso de ley. Véase Moste11er, op. cit. Véase, también, U.S. ex rel. Shiflet v. Lane, 815 F.2d 457 (7mo Cir. 1987).
*195 Así pues, se ha resuelto que cuando el Estado transgrede los derechos que dimanan de la Quinta, Sexta o Decimocuarta enmienda de la Constitución federal y, en consecuencia, obtiene evidencia a través de la intrusión intencional e inadecuada en los derechos constitucionales de una persona, el remedio correspondiente en el procedimiento criminal se limita a negarle a la Fiscalía los frutos de la transgresión. U.S. v. Morrison, 449 US 361, 366 (1980); Shillinger v. Haworth, 70 F.3d 1132, 1143 (10mo Cir. 1995).(16)
Al repasar los hechos de este caso, vemos que la defensa del señor Fernández se limitó a reclamar la supresión de evidencia y desestimación de los cargos amparándose en que el Estado violó su derecho constitucional a no autoincriminarse, el privilegio abogado-cliente, y su derecho a un debido proceso de ley. Ciertamente, reiteramos, por los fundamentos expuestos en Pueblo v. Fernández Rodríguez, supra, que las partes del testimonio que involucraban materia privilegiada no debieron admitirse en evidencia. Ahora bien, circunscribiéndonos a los reclamos de la defensa, es forzoso concluir que no procede lo solicitado puesto que en este caso el Estado no cometió acción ilegal alguna que infringiera los derechos constitucionales del señor Fernández, ni su privilegio abogado-cliente. Surge de los testimonios vertidos en el TPI que el licenciado Carbone divulgó voluntariamente, sin coacción alguna por parte del agente Curbelo, información confidencial. Por tanto, no procede suprimir la evidencia derivativa. Ello pues, en este caso no cabe la menor duda de que está ausente alguna acción inconstitucional o ilegal atribuible al Estado.(17)
*196 III
Por los fundamentos que anteceden, concurrimos con la opinión en reconsideración que hoy se emite.

 Transcripción de la vista de 25 y 29 octubre 2009, pág. 41.

 íd., pág. 11.

 Transcripción de la vista de 29 de octubre de 2007 y 7 de mayo de 2008, pág. 8.

 Transcripción de la vista 25 y 29 de octubre de 2007, pág. 12.

 íd., pág. 49.

 íd., pág. 39.

 íd., pág. 12, pág. 37. Véase, además, Transcripción de la vista de 29 de octubre de 2007 y 7 de mayo de 2008, pág. 9.

 íd., pág. 13.

 Como regla general, este tipo de evidencia es una “cuyo origen está vinculado estrechamente a la evidencia obtenida originalmente en violación de la protección constitucional” que provee la Sec. 10 de nuestra Carta de Derechos contra arrestos y allanamientos ilegales, Art. II, Sec. 10, Const. PR, LPRA, Tomo 1, ed. 2008. Pueblo v. Miranda Alvarado, 143 DPR 356, 371 (1997).

 Se ha expresado que: “[t]here is a derivative evidence component to most of the constitutional exclusionary rules”. E.J. Imwinkelried, The New Wigmore: A treatise on evidence: evidentiary privileges, Ed. 2, Sec. 6.6.6. Aspen Publishers, Vol. 2, pág. 709.

 Resulta interesante cómo en una concisa, pero directa opinión, el Tribunal Supremo federal reconoce la necesidad de hacer funcional la norma establecida en la Carta Magna de Estados Unidos. Veamos:
“[...] The Government now, while in form repudiating and condemning the illegal seizure, seeks to maintain its right to avail itself of the knowledge obtained by that means which otherwise it would not have had.
“The proposition could not be presented more nakedly. It is that although of course its seizure was an outrage which the Government now regrets, it may study the papers before it returns them, copy them, and then may use the knowledge that it has gained to call upon the owners in a more regular form to produce them; that the protection of the Constitution covers the physical possession but not any advantages that the Government can gain over the object of its pursuit by doing the forbidden act. Weeks v. United States, 232 U.S. 383, 34 Sup. Ct. 341, 58 L.Ed. 652, L.R.A. 1915B, 834, Ann. Cas. 1915C, 1177, to be sure, had established that laying the papers directly before the grand jury was unwarranted, but it is taken to mean only that two steps are required instead of one. In our opinion such is not the law. It reduces the Fourth Amendment to a form of words. The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the Government’s own wrong cannot be used by it in the way proposed.” (Enfasis nuestro y citas omitidas). Silverthorne Lumber Co. v. U.S., 251 US 385, 391-392 (1920).

 Emdas. V, VI y XIV, Const. EE. UU., LPRA, Tomo 1, ed. 2008.

 En cuanto a las disposiciones de las cuales emana el derecho a la asistencia de abogado, el Profesor Chiesa nos aclara lo siguiente:
“No cabe duda alguna de que, actualmente, el derecho a asistencia de abogado durante el interrogatorio bajo custodia del sospechoso emana de la Enmienda Quinta como corolario del privilegio contra la autoincriminación y no, del derecho a asistencia de abogado en la Enmienda Sexta”. E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Colombia, Ed. Forum, 1991, Vol. 1, pág. 66. Véase, también, Massiah v. U.S., 377 US 201 (1964).
Nos señala, además, que el derecho a la asistencia de un abogado que emana directamente de la Enmienda Sexta solo se activa tras la denuncia o acusaciones decir, con el comienzo de procedimientos adversativos formales. Chiesa, op. cit., pág. 66. Según nuestro entramado de reglas procesales criminales esto significa que se activa el derecho a asistencia de abogado luego de la presentación de una denuncia, acusación, determinación de causa probable para el arresto, o comparecencia ante magistrado tras la realización de un arresto sin orden. Id., pág. 65 esc. 41.

 Cabe aclarar que en este caso la corte enfatizó que ante un interrogatorio de un sospechoso bajo custodia, para proteger el derecho contra la autoincriminación, es *194 necesario que se le haga al individuo las advertencias sobre sus derechos constitucionales, lo que se ha conocido como los Miranda rights.

 Citando a Shillinger v. Haworth, 70 F.3d 1132, 1142 (10mo Cir. 1995).

 En este último caso se expresó que: “Morrison ([U.S.] v. Morrison, 449 U.S. 361 (1980)) makes clear that evidence obtained through an intentional and improper intrusion into a defendant’s relationship with his attorney, as well as any “fruits of [the prosecution’s] transgression” must be suppressed in proceedings against him”. (Citas omitidas).

 Tal como se mencionó en US. v. Neill, 952 F. Supp. 834, 839 (D. D.C.1997), “[nonetheless, not every intrusion on the attorney-client privilege constitutes a constitutional violation, an intrusion may result in a constitutional violation if pri *196 vileged information is intentionally obtained and used to the defendant’s detriment at trial”.