Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| **A.L.E.R.T. SECURITY CORP.**<br><br>Apelante<br><br>v.<br><br>**ASOCIACION DE PROPIETARIOS DE VEGA SERENA INC., Y OTROS**<br><br>Apelados | TA2025AP00199 | ***APELACIÓN***<br>procedente del Tribunal de Primera Instancia Sala Superior de **Bayamón**<br><br>Caso Número:<br>**VB2024CV00309**<br>(Salón 403)<br><br>Sobre:<br>**Incumplimiento de Contrato**<br>**Daños y Perjuicios** |

Panel integrado por su presidenta la Juez Sánchez Ramos, el Juez Jueza Romero García y el Juez Pérez Ocasio

Pérez Ocasio, Juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de agosto de 2025.

Comparece ante nos A.L.E.R.T. Security, en adelante, ALERT o apelante, solicitando que revisemos la *"Sentencia Sumaria"* notificada el 3 de julio de 2025 por el Tribunal de Primera Instancia, Sala Superior de Bayamón, en adelante, TPI-Bayamón. En la misma, el Foro Apelado desestimó la demanda por incumplimiento contractual y daños y perjuicios de la apelante contra la Asociación de Propietarios de Vega Serena, Inc., en adelante, Vega Serena o apelada.

Por los fundamentos que expondremos a continuación, *revocamos* el dictamen del TPI-Bayamón.

**I.**

El 1 de agosto de 2017, ALERT y Vega Serena suscribieron un contrato de servicios profesionales, en el que establecieron que durante cuatro (4) meses, la apelante les ofrecería a los residentes de Vega Serena los servicios de seguridad.[1] En representación de

---

[1] SUMAC, Entrada 32, Anejo 1, pág. 60.

ALERT, compareció José Caraballo y en representación de Vega Serena, compareció la Presidenta de su Junta de Directores, Doris Gaetán.

Ahora bien, del expediente surge una carta mediante la cual Doris Gaetán renunció a su puesto como Presidenta de la Junta de Directores de Vega Serena, efectivo el 31 de marzo de 2021.

Sin embargo, el 7 de agosto de 2021, las partes suscribieron otro contrato de servicios profesionales, en el que compareció José Caraballo en representación de ALERT y *Doris Gaetán en representación de Vega Serena.* Establecieron el mismo con un periodo de dos (2) años.[2]

Por ser relevante a la controversia de autos, destacamos que, en el contrato del año 2021, sujeto de la controversia, las partes pactaron que las dudas o situaciones respecto a los servicios de ALERT serían notificadas por correo electrónico, para que en un periodo de diez (10) días esta última los atendiera. También dispusieron que la apelada no podía remover los empleados de la apelante, por no estar satisfechos con su labor, y que esto no sería razón para no renovar o para cancelar el contrato. Finalmente, es importante destacar que este acuerdo estableció una vigencia de dos (2) años, y un periodo de treinta (30) días previo a su resolución para su renovación tácita durante el mismo tiempo.

Ahora bien, surge del expediente que el 3 de mayo de 2024, ALERT presentó una *"Demanda"* ante el TPI-Vega Baja por incumplimiento contractual y daños contra Vega Serena.[3] En la misma adujeron que luego de vencido el periodo de dos (2) años, las partes no negociaron términos distintos, por lo que entendieron que el mismo quedó renovado automáticamente en el mes de julio del año 2023. Sin embargo, sostuvieron que el 13 de agosto de 2023,

---

[2] SUMAC, Entrada 36, Anejo II.
[3] SUMAC, Entrada 1.

recibieron una carta de Vega Serena indicándoles que no renovarían el contrato a partir del 15 de agosto de 2023.[4] La carta explica que no requerirán los servicios de ALERT, ya que estos no habían entregado unos documentos solicitados por la apelada, entre otras quejas de los guardias de seguridad. Por estos hechos, ALERT solicitó la reinstalación de su contrato hasta julio del año 2025, y el pago del tiempo transcurrido, además de los daños causados por razón del incumplimiento.

En su *"Contestación a Demanda"* el día 3 de agosto de 2024, Vega Serena sostiene que el único contrato pactado con ALERT fue firmado el 1 de agosto de 2017, con una vigencia de cuatro (4) meses. Aducen que, para la fecha del contrato del año 2021, Doris Gaetán no era la Presidenta de la Junta de Directores de Vega Serena. En síntesis, exponen que el contrato objeto de la demanda no fue pactado entre las partes.

Luego de varias instancias procesales, el 11 de abril de 2025, Vega Serena presentó una *"Moción Solicitando Sentencia Sumaria"*.[5] En la misma, expuso la siguiente relación de hechos no controvertidos:

1. La Sra. Doris Ann Gaetán renunció a su cargo como Presidenta de la Junta de Directores de la APVS el 31 de marzo de 2021.
2. El contrato que la demandante alega contiene una cláusula de renovación automática fue firmado por la Sra. Doris Ann Gaetán el 7 de agosto de 2021.
3. Para la fecha de la firma del contrato (7 de agosto de 2021), la Sra. Gaetán ya no era Presidenta, ni era miembro, de la Junta de Directores de la APVS.
4. El Sr. José Caraballo admitió en su deposición que la Sra. Gaetán había renunciado a la Junta de Directores antes de la firma del contrato.
5. El único contrato válidamente suscrito entre las partes es el del 1 de agosto de 2017, el cual no contiene una cláusula de renovación automática.

---

[4] SUMAC, Entrada 32, Anejo 1, pág. 68.
[5] SUMAC, Entrada 32.

Para sustentar estos hechos, la apelada anejó los siguientes documentos a su solicitud:

1. Transcripción de la Deposición de José Caraballo el 20 de febrero de 2025.[6]
2. Contrato de Servicios Profesionales entre las partes del año 2017.[7]
3. Contrato de Servicios Profesionales entre las partes del año 2021.[8]
4. Carta de renuncia de Doris Gaetán.[9]
5. Comunicado a los residentes de Vega Serena sobre la renuncia de Doris Gaetán.[10]
6. Copia de cheque emitido por Vega Serena con fecha del 31 de diciembre de 2019.[11]
7. Carta por Vega Serena, dirigida a ALERT, con fecha del 13 de agosto de 2023.[12]
8. Certificado de Registro de Comerciante de ALERT.[13]

Por estos hechos, solicitó que el Foro Apelado declarara que la firma de Doris Gaetán no los vinculó contractualmente con ALERT, por lo que no se violó la cláusula de renovación automática. Así, peticionó la desestimación de la demanda en su contra.

Por su parte, el 21 de mayo de 2025, ALERT presentó su *"Moción en Oposición a Solicitud de Sentencia Sumaria"*.[14] En su escrito, ofreció una serie de respuestas a los hechos incontrovertidos de la solicitud de Vega Serena. Con relación al hecho número tres (3), expuso que José Caraballo, presidente de ALERT, siempre conoció a Doris Gaetán como la Presidenta de la Junta de Vega Serena, nunca había visto la carta de renuncia y Vega Serena nunca le informó de la alegada renuncia. Además, sostuvo que la apelada continuó recibiendo los servicios de ALERT por más de dos (2) años, según lo pautado en el contrato.

---

[6] SUMAC, Entrada 32, Anejo 1, pág. 1.
[7] SUMAC, Entrada 32, Anejo 1, pág. 60.
[8] SUMAC, Entrada 32, Anejo 1, pág. 64.
[9] SUMAC, Entrada 32, Anejo 1, pág. 68.
[10] SUMAC, Entrada 32, Anejo 1, pág. 69.
[11] SUMAC, Entrada 32, Anejo 1, pág. 70.
[12] SUMAC, Entrada 32, Anejo 1, pág. 71.
[13] SUMAC, Entrada 32, Anejo 1, pág. 79.
[14] SUMAC, Entrada 36.

Con relación al hecho número cuatro (4), afirmaron que la parte contratante del acuerdo pactado en el año 2021 fue Vega Serena y no Doris Gaetán.

Con relación al hecho número cinco (5), reiteraron lo esbozado para el hecho número tres (3), es decir, negando que Doris Gaetán fuera Presidenta o miembro de la Junta de Vega Serena.

Con relación al hecho número seis (6), negaron que José Caraballo tuviera conocimiento de la renuncia de Doris Gaetán, previo a la firma del contrato. Reiteran que ALERT continuó ofreciéndole servicios a Vega Serena, facturando por ellos y recibiendo la compensación correspondiente a ello.

Con relación al hecho número siete (7), ALERT negó que el único contrato válido entre las partes fuera el del año 2017. Para ello, insistieron que Vega Serena no solo recibía y pagaba por los servicios de ALERT, sino que él solicitaba informes a estos.

Además, la apelante presentó sus propios hechos incontrovertidos, los cuales rezan de la siguiente manera:

1. Alert Security y Asociación de Residentes de Vega Serena suscribieron un contrato para servicios de seguridad, inicialmente en 2017, donde se incluía el uso de un carrito de golf por cuatro meses.

2. Alert Security y la Asociación de Residentes de Vega Serena suscribieron un contrato para servicios de seguridad el 7 agosto de 2021, donde la Sra. Doris Gaetán, compareció en representación de la Asociación.

3. Alert Security prestó servicios de seguridad a la Asociación de Residentes Vega Serena bajo el contrato de 2021 y su renovación, hasta el 13 de agosto de 2023 cuando la Asociación le envió una carta cancelando el contrato.

4. La Junta de Directores de Vega Serena, a través de la administradora, le solicitaba informes a Alert Security.

5. La Junta de Directores de Vega Serena le solicitaba a Alert Security que le proveyera semanalmente los itinerarios de los guardias.

6. La Junta de Directores de Vega Serena, se quejó y pidió a Alert remover a un empleado que fumaba en las áreas comunes.

7. La Junta de Directores de Vega Serena nunca notificó que la Sra. Gaetán no tenía autorización para firmar el contrato de servicios de 2021.

8. La Junta de Directores de Vega Serena se mantuvo utilizando los servicios de Alert Security desde 2021 y pagando hasta agosto de 2023 bajo el contrato que ahora alegan no era válido.

9. La supuesta carta de renuncia de la Sra. Gaetán a la Junta de Directores presentada al representante de Alert Security en la deposición no tiene firma.

10. La Asociación de Residentes de Vega Serena no incluyó a la Sra. Gaetán como parte en el litigio si entendía que el contrato suscrito por ella en su representación no era válido. Expediente caso de autos.

Para validar sus respuestas a los hechos incontrovertidos propuestos en la solicitud de sentencia sumaria, y su propia exposición de hechos que no están en controversia, ALERT presentó junto a su escrito los siguientes documentos:

1. Deposición de Jose Caraballo el 20 de febrero de 2025.[15]
2. Contrato entre las partes del año 2021.[16]
3. Carta dirigida a ALERT, remitida por Vega Serena el 13 de agosto de 2023.[17]

ALERT sostuvo que el Foro Primario no debía disponer de su demanda de manera sumaria, ya que existe controversia sobre el contrato suscrito entre las partes. Sostuvo que, aun de entender que Doris Gaetán no tenía la facultad de comprometer a Vega Serena en el contrato del año 2021, restaría determinar en juicio plenario si el contrato en cuestión quedó ratificado, y eventualmente fue incumplido.

Sin embargo, el 3 de julio de 2025, el TPI-Bayamón notificó su *"Sentencia Sumaria"*, en la que declaró *"Ha Lugar"* la solicitud de

---

[15] SUMAC, Entrada 36, Anejo 1.
[16] SUMAC, Entrada 36, Anejo 2.
[17] SUMAC, Entrada 36, Anejo 3.

Vega Serena para que se adjudicara sumariamente, y desestimó la demanda de ALERT.[18]

Inconforme, el 4 de agosto de 2025, la apelante radicó una "Apelación Civil" ante esta Curia, en la que planteo los siguientes errores:

> **Erró el Honorable Tribunal de Primera Instancia al dictar Sentencia Sumaria aun cuando existen controversias reales sobre hechos materiales que no permiten la adjudicación del caso sin escuchar prueba y dirimir credibilidad.**

> **Erró el Honorable Tribunal de Primera Instancia al dictar Sentencia Sumaria cuando surge que la parte apelada, si entendía que el contrato no era válido, lo ratificó con sus acciones al guardar silencio y mantener los servicios por más de dos años.**

Por su parte, Vega Serena presentó ante nos su alegato en oposición el 11 de agosto de 2025, quedando así perfeccionado el recurso. Por todo lo cual, procedemos a expresarnos.

## II.

### A. Apelación

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones, mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La *apelación* no es un recurso discrecional como en los casos de *certiorari*. Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241,

---

[18] SUMAC, Entrada 40.

252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017).

Es harto conocido que, al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *Íd.*, pág. 771; *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). De manera que, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414 (2013); *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

Sin embargo, la norma de deferencia esbozada encuentra su excepción y cede cuando la parte promovente demuestra que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689 (2012). Además, se requiere que nuestra intervención en esta etapa evite un perjuicio sustancial. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Por *discreción* se entiende el "tener poder para decidir en una forma u otra, esto es, para escoger entre uno o varios cursos de acción". *García v. Asociación*, 165 DPR 311, 321 (2005), citando a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). No obstante, "el adecuado ejercicio de la discreción está inexorable e

indefectiblemente atado al concepto de la razonabilidad". *Íd.* A esos efectos, el Tribunal Supremo de Puerto Rico ha indicado cuáles son situaciones que constituyen un abuso de discreción, a saber:

> [C]uando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos.
>
> *Ramírez v. Policía de P.R.*, 158 DPR 320, 340-341 (2002), citando a *Pueblo v. Ortega Santiago*, supra, págs. 211-212.

Así, pues, la discreción no implica que los tribunales puedan actuar de una forma u otra en abstracción del resto del derecho. *Rivera et al. v. Arcos Dorados et al.*, supra.

### B. Sentencia Sumaria

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, es un vehículo para asegurar la solución justa, rápida y económica de un caso. *Coop. Seguros Múltiples y otros v. ELA y otros,* 2025 TSPR 78, 216 DPR ___ (2025); *Consejo Tit. v. Rocca Div. Corp. et als,* 2025 TPSR 6, 215 DPR ___ (2025); *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR ___ (2025); *Cruz, López v. Casa Bella y otros,* 213 DPR 80, 90 (2023); *Birriel Colón v. Econo y otro,* 2023 TSPR 120, 213 DPR ___ (2023); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *Oriental Bank v. Caballero García,* 212 DPR 671, 678 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601, 610 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, 208 DPR 964, 979 (2022). Dicho mecanismo permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones en las cuales no exista controversia material de hecho que requiera ventilarse en

un juicio plenario y el derecho así lo permita. *BPPR v. Zorrilla Posada y otro,* 2024 TSPR 62, 213 DPR \_\_\_ (2024); *Cruz, López v. Casa Bella y otros,* supra, pág. 993; *Oriental Bank v. Caballero García,* supra, pág. 678; *Segarra Rivera v. Int'l. Shipping et al.,* supra, pág. 980. Este mecanismo lo puede utilizar la parte reclamante o aquella parte que se defiende de una reclamación. Reglas 36.1 y 36.2 de Procedimiento Civil, supra.

Mediante el mecanismo de sentencia sumaria, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *León Torres v. Rivera Lebrón,* 204 DPR 20, 42 (2020). Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Segarra Rivera v. Int'l. Shipping et al.,* supra, pág. 979; *Ramos Pérez v. Univisión,* 178 DPR 200, 214 (2010). Como se sabe, en aras de prevalecer en una reclamación, la parte promovente debe presentar prueba incontrovertible sobre todos los elementos indispensables de su causa de acción. *Id.*

Nuestro ordenamiento civil y su jurisprudencia interpretativa impone unos requisitos de forma con los cuales hay que cumplir al momento de presentar una solicitud de sentencia sumaria, a saber: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las

razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. Regla 36.3 de Procedimiento Civil, supra; *Oriental Bank v. Caballero García,* supra, pág. 679; *Pérez Vargas v. Office Depot,* 203 DPR 687, 698 (2019). Si la parte promovente de la moción incumple con estos requisitos, "el tribunal no estará obligado a considerar su pedido". *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 111 (2015).

Por otro lado, "la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación". *BPPR v. Cable Media,* supra; *BPPR v. Zorrilla Posada y otro,* supra; *León Torres v. Rivera Lebrón,* supra, pág. 43. Por el contrario, quien se opone a que se declare con lugar esta solicitud viene obligado a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho la parte promovente puesto que, si incumple, corre el riesgo de que se dicte sentencia sumaria en su contra, si la misma procede en derecho. *Id.* Es decir, el hecho de no oponer a un petitorio sumario no implica que este necesariamente proceda, sin embargo, si no se demuestra que existen controversias sustanciales sobre los hechos materiales, nada impide al foro sentenciador de dictar sentencia sumaria. *Ramos Pérez v. Univisión,* supra, pág. 215.

Por ello, en la oposición a una solicitud de sentencia sumaria, la parte promovida debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *León Torres v. Rivera Lebrón,* supra, pág. 44. Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la antes citada Regla 36.3 de Procedimiento Civil, supra. *Id.* En otras palabras, la parte opositora

tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Id.* De lo anterior, se puede colegir que, ante el incumplimiento de las partes con las formalidades de la Regla 36 de Procedimiento Civil de 2009, supra, la consideración de sus posiciones descansa en la sana discreción del Tribunal.

Al atender la solicitud, el Tribunal deberá asumir como ciertos los hechos no controvertidos que se encuentren sustentados por los documentos presentados por la parte promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). Toda inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues solo procede si bajo ningún supuesto de hechos prevalece la parte promovida. *E.L.A. v. Cole*, supra, pág. 625. Además, al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador o juzgadora debe actuar guiado por la prudencia y ser consciente, en todo momento, que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *León Torres v. Rivera Lebrón,* supra, pág. 44.

Sin embargo, la sentencia sumaria generalmente no procederá, ***cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad***. *Soto y otros v. Sky Caterers,* supra; *Cruz, López v. Casa Bella y otros*, supra, pág. 993; *Acevedo y otros v. Depto. Hacienda y otros,* 212 DPR 335, 350 (2023); *Segarra Rivera v. Int'l. Shipping et al.*, supra. Además, ***existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones***. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía

sumaria "casos complejos o casos que involucren cuestiones de interés público". *Id.* No obstante, la sentencia sumaria procederá si atiende cuestiones de derecho. *Universal Ins. y otros v. ELA y otros,* 211 DPR 455, 471, 472 (2023).

El Tribunal Supremo de Puerto Rico ha discutido los criterios que este Tribunal de Apelaciones debe considerar al momento de revisar una sentencia dictada sumariamente por el Foro Primario. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 679-680 (2018); *Meléndez González et al. v. M. Cuebas*, supra, págs. 118-119. Sobre ese particular, nuestro más Alto Foro señaló que:

> [E]l Tribunal de Apelaciones debe: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la Moción de Sentencia Sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos, y (4) de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.
>
> *Roldán Flores v. M. Cuebas et al.,* supra, pág. 679.

Conforme a lo anterior, "nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria". *Coop. Seguros Múltiples y otros v. ELA y otros,* supra; *Consejo Tit. v. Rocca Div. Corp. et als,* supra; *Soto y otros v. Sky Caterers,* supra; *BPPR v. Cable Media, BPPR v. Zorrilla Posada y otro,* supra; *Cruz, López v. Casa Bella y otros,* supra, pág. 994; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019). Por ello, nuestra revisión es una *de novo,* y nuestro análisis debe regirse por las disposiciones de la Regla 36 de

Procedimiento Civil, supra, y su jurisprudencia interpretativa. De esta manera, si entendemos que los hechos materiales realmente están incontrovertidos, debemos revisar *de novo* si el foro primario aplicó correctamente el derecho.

**III.**

En su dictamen, el TPI-Bayamón concluyó que por no haberse presentado prueba sobre la facultad de Doris Gaetán para firmar el contrato del año 2021, y no desprenderse del contrato del año 2017 una cláusula de renovación automática, la demanda no procedía. La apelante recurre ante este Foro impugnando la *"Sentencia Sumaria"* dictada en su contra, mediante la cual fue desestimada su *"Demanda"* contra la apelada. Aduce, a través de sus errores, que el Foro Apelado no debió dictar sentencia sumaria, porque existen hechos materiales en controversia, como la facultad de Doris Gaetán, para dirimir la controversia. *Le asiste la razón.*

Por ser esta apelación producto de una *"Sentencia Sumaria"*, nuestra revisión de la misma es una *de novo*. Habiendo realizado un exhaustivo análisis del expediente, los alegatos de las partes, la solicitud para dictar sentencia sumaria, y la oposición a la misma, nos encontramos en posición de resolver.

Un hecho no contencioso es que entre ALERT y Vega Serena existió algún tiempo de acuerdo contractual. De la prueba que obra en autos, se desprende, y ninguna parte lo contiende, que la apelante estuvo brindándole servicios a la apelada durante los años 2021-2023. Ahora bien, la controversia redunda en la validez de lo estipulado textualmente – más específicamente aun en la cláusula de renovación tácita – en el contrato de servicios suscrito el 7 de agosto de 2021.

En la petición de sentencia sumaria de Vega Serena, y los documentos anejados, la apelada sostiene que Doris Gateán no

tenía la autoridad para firmar por ella. Para ello, presentó un documento alegadamente suscrito por esta, en la que renunciaba a su puesto. Sin embargo, no surge dirección – física o electrónica – o firma de su remitente.

Por otro lado, en su deposición, José Caraballo alega que ALERT nunca fue notificado del cambio en administración, por lo que siempre creyó a Doris Gaetán como representante autorizada de Vega Serena. Es decir, justipreciamos que existe causa para aplicar la doctrina de *autoridad aparente*, con relación a la apreciación de ALERT sobre la facultad de Doris Gaetán. La jurisprudencia ha reconocido que una corporación puede quedar vinculada por las actuaciones de un sujeto, con autoridad aparente. Este fenómeno "solo existe o se reconoce con relación a terceras personas; esto es, la autoridad que personas ajenas a la corporación pueden razonablemente entender que un oficial corporativo posee en vista de la conducta y el desempeño de la corporación". C.E. Díaz Olivo, *Corporaciones: Tratado sobre Derecho Corporativo*, 2da ed. rev., Colombia, Ed. Alma Forte, 2018, págs. 195–196.[19]

Por su parte, ALERT sostuvo que, de ser cierta la renuncia de Doris Gaetán, nunca fue notificada y que la relación entre las partes tomó su curso, según pactado, por más de dos (2) años. Es decir, alegó creer de buena fe, y por la conducta de Vega Serena, que el contrato de servicios del año 2021 se había suscrito conforme a la realidad y al derecho.

Entendemos que, esta disputa entre las partes recae sobre un hecho esencial de la controversia. De igual forma, destacamos que lo controvertido – a nuestro juicio, de manera satisfactoria – por ALERT, versa sobre elementos subjetivos que requieren, del proceso

---

[19] Nuestro Alto Foro ha aplicado la referida doctrina en casos de naturaleza pública, medicolegal, corporativo, entre otros. *SLG Rivera-Pérez v. SLG Díaz-Doe et al.*, 207 DPR 636 (2021); *Pueblo v. Miranda Alvarado*, 143 DPR 356 (1997); *Berrios v. U.P.R.*, 116 DPR 88 (1985).

ordinario, descubrimiento de prueba y una adjudicación adecuada de evidencia. Es nuestra postura, que la evidencia que tuvo ante sí el Foro Apelado no estableció contundentemente que el único contrato válido entre las partes fue el del año 2017.

Lo cierto es, que la apelada no niega que recibió y pagó por los servicios de ALERT durante los años 2021-2023. Entendemos, también, que los documentos de Vega Serena, como la carta de renuncia según presentada, quedaron razonablemente impugnados mediante la deposición de José Caraballo y las propias acciones de la apelada. Sin embargo, reconocemos que, en este caso, la evidencia producida mediante deposición, aunque hábil para refutar los alegados hechos incontrovertibles de la solicitud de sentencia sumaria, no es lo suficientemente categórico para descubrir la verdad. Por ello, justipreciamos que el TPI-Bayamón debió permitir el curso natural de la demanda, y declarar *"No Ha Lugar"* la solicitud de sentencia sumaria.

**IV.**

Por todo lo cual, *revocamos el dictamen apelado, y devolvemos el asunto al Foro Original* para la continuación de los procedimientos, y la adjudicación de la controversia en sus méritos mediante juicio ordinario.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones