ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| LUIS ÁNGEL MARTÍNEZ OLIVERAS/ÁNGEL ABDIEL MARTÍNEZ CRUZ<br><br>Apelantes<br><br>V.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO POR CONDUCTO DEL HONORABLE DOMINGO EMANUELLI HERNÁNDEZ, SECRETARIO DE JUSTICIA<br><br>Apelados | TA2025AP00137 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala de Bayamón<br><br>Caso Núm. BY2022CV00601<br><br>Sobre:<br><br>Impugnación de Confiscación |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Alvarez Esnard, y la jueza Prats Palerm

**Brignoni Mártir, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 23 de septiembre de 2025.

Comparece el Sr. Luis Ángel Martínez Oliveras ( señor Martínez Oliveras o el Apelante), y solicita la revocación de la Sentencia emitida y notificada el 23 de mayo de 2025 por el Tribunal de Primera Instancia, Sala de Bayamón (TPI o foro primario), en su caso civil de impugnación de confiscación presentado en contra del Estado Libre Asociado de Puerto Rico (ELA, el Gobierno de PR o la parte apelada), a raíz de la ocupación de un vehículo de motor por parte de la Policía Estatal de Puerto Rico ocurrida el 29 de diciembre de 2021. Mediante la referida Sentencia, el foro primario declaró no ha lugar la Demanda de impugnación de confiscación presentada por el Apelante y concluyó que es improcedente aplicar la doctrina del fruto del árbol ponzoñoso a los casos civiles incoados al amparo de la *Ley Uniforme de Confiscaciones de 2011*.

Por los fundamentos que expondremos a continuación **revocamos** la Sentencia apelada.

**I.**

El 11 de enero de 2022, el ELA ordenó la confiscación del vehículo de motor Ford, F-150, año 2016, tablilla 1052517, propiedad del Apelante.

El 14 de febrero de 2022, el Apelante y el Sr. Ángel Abdiel Martínez Cruz presentaron Demanda de impugnación de confiscación en contra del ELA ante el foro primario. Alegaron que el 29 de diciembre de 2021, el ELA ocupó el vehículo de motor Ford, F-150, año 2016, tablilla 1052517 (en adelante, el "Vehículo"), el cual estaba registrado a nombre del Apelante, el señor Martínez Olivera. En la Demanda se alegó que el Vehículo aparecía inscrito a nombre del Apelante, y cuyo codueño era el codemandante, el Sr. Ángel Abdiel Martínez Cruz, quien estaba autorizado a conducir el Vehículo, objeto de la demanda de impugnación de confiscación. En esencia, señalaron que la ocupación y confiscación del Vehículo obedeció a que alegadamente este se usó en violación a los Artículos 401 y 412 de la *Ley de Sustancias Controladas de Puerto* Rico y los Artículos 6.08 y 6.22 de la Ley 168 de 2019 Ley de Armas de Puerto Rico, en Vega Baja, Puerto Rico.

Asimismo, se alegó además, en la Demanda que la referida confiscación es nula, injustificada e ilegal toda vez que nunca habían utilizado el vehículo objeto de la confiscación para la comisión de delito, ni el vehículo había estado vinculado a delito alguno. Esbozaron también que la confiscación es contraria a la ley por ausencia de motivo fundado sobre la comisión de un delito para realizar la intervención que dio base para la ocupación y la posterior confiscación.

El 3 de marzo de 2022, el ELA presentó *Contestación a Demanda* ante el foro primario.[1] Allí aduce que se presumía la legalidad y corrección de la confiscación, independientemente de cualquier otro caso penal, administrativo o cualquier otro procedimiento relacionado a los mismos hechos y que el Apelante tenía el peso de la prueba para derrotar la legalidad de la confiscación conforme a lo dispuesto en el Art. 15, Ley Uniforme de Confiscaciones de 2011, *supra*. De igual forma el ELA sostuvo que la parte demandante no había demostrado tener legitimación activa sobre el vehículo confiscado; por lo que carece de una causa de acción para invocar remedio

---

[1] *Véase* Entrada Núm. 6 de SUMAC TPI, en el Caso núm. BY2022CV00601.

alguno y procede la desestimación de la demanda. Art. 15, *Ley Uniforme de Confiscaciones de 2011*, *supra*.

El 7 de noviembre de 2024, se celebró la Conferencia con Antelación a Juicio y se informó que la demanda se desistió en cuanto al Sr. Ángel Abdiel Martínez Cruz, ya que no tenía legitimación activa; posteriormente éste falleció y los casos criminales en su contra se archivaron bajo las reglas de procedimiento criminal. En cuanto al Apelante este informó que los cargos criminales radicados en su contra no prosperaron a nivel de vista preliminar.[2]

Al Juico en su Fondo señalado para el **10 de febrero de 2025** compareció el Lcdo. Jorge Gordon Pujol, en representación del Apelante, y el Lcdo. Jesús Ignacio Bautista, en representación del ELA. Previo al inicio del desfile de prueba, las partes llegaron a las siguientes estipulaciones incluidas en un *Informe*:

> El Estado Libre Asociado de Puerto Rico, a través de la Policía de Puerto Rico, ocupó el pasado 29 de diciembre de 2021, el vehículo marca FORD, modelo F150 LARIAT, color BLANCA, tablilla 1052517, año 2016.
>
> La orden de confiscación se expidió el 11 de enero de 2022.
>
> La notificación sobre la confiscación enviada el 20 de enero de 2022 y fue recibida por el demandante Luis A. Martínez Oliveras y Ángel Abdiel Martínez Cruz el 22 de enero de 2022.
>
> El valor de tasación del vehículo confiscado adjudicado por la Junta de Confiscaciones es de $30,000.00.
>
> El vehículo de motor marca FORD, modelo F-150 LARIAT, color BLANCA, tablilla 1052517, año 2016 **se registró y allanó sin una orden de registro y allanamientos expedida por un Juez.**
>
> **El vehículo confiscado aparece registrado a nombre del Sr. Luis Ángel Martínez Oliveras, en el Registro de Vehículos del Departamento de Transportación y Obras Públicas, de Puerto Rico**.
>
> El Tribunal declaró con lugar la legitimación activa del Sr. Luis Ángel Martínez Oliveras el 29 de marzo de 2022.
>
> Ninguna persona resultó convicta criminalmente por los hechos que motivan la confiscación.
>
> No existe en los registros de la Policía de Puerto Rico ni en ningunos de sus departamentos querella a favor del demandante, que esté relacionada con el hurto o robo del vehículo marca Ford, Modelo F-150, Año 2016, 4 puertas, color blanco, tablilla 1052517 a nombre de Luis Ángel Martínez Oliveras.[3]

---

[2] *Véase* Minuta de la Vista sobre Conferencia con Antelación al Juicio celebrada el 7 de noviembre de 2024.

[3] *Véase*, Entrada Núm. 29 de SUMAC TPI, presentada el 24 de octubre de 2024, en el caso núm. BY2022CV00601.

En la Vista en su Fondo celebrada el 10 y 12 de febrero de 2025, se admitió como prueba documental presentada por el Apelante y estipulado por ambos: (*Exhibit* 1) Orden de Registro y Allanamiento,( *Exhibit* 2) Videos grabados en un *pen drive*, y (*Exhibit* 3) Fotografías. Luego del testimonio del señor Martínez Oliveras, el ELA presentó como testigo al Agente Ángel A. Sánchez Rodríguez, (placa 35076). Durante el curso del testimonio del agente Sánchez Rodríguez se admitió como prueba documental del ELA: (Exhibit 1) Plan para efectuar arrestos/aprehensiones y/o registros/ allanamientos, (Exhibit 2ª) Advertencias para personas sospechosas en custodia dado a Ángel Abdiel Martínez Cruz, (Exhibit 2b) Advertencias para personas sospechosas en custodia dado a Luis Ángel Martínez Olivieras, (Exhibit 3) Inventario de Propiedad Ocupada a Ángel A. Martínez Cruz, (Exhibit 4) Inventario de Propiedad Ocupada a Luis A. Martínez Olivieras, (*Exhibit* 5) Prueba de Campo, (Exhibit 6) Diligenciamiento del Inventario/Orden de Allanamiento, (*Exhibit* 7) PPR-612.1 Consentimiento a un Registro, (*Exhibit* 8) Orden de Confiscación, (*Exhibit* 9) Carta de Notificación con Acuse de Recibo, *Exhibit* 10) PPR-621.1 Informe de Incidentes, (*Exhibit* 11) PPR-128 Inventario de Vehículo, *Exhibit* 12 PPR-105.7 Certificado de Inspección de Vehículo de Motor y Equipo Pesado, (*Exhibit* 13) Fotos tomadas por la Junta de Confiscación al vehículo, (*Exhibit* 14) Denuncias, y (*Exhibit* 15) Certificado de Defunción.

Mediante Sentencia emitida y notificada el 23 de mayo de 2025 el foro primario declaró *No Ha Lugar* la Demanda de impugnación de confiscación presentada por el Apelante. El TPI aclaró que surgía del Inventario del Vehículo (*Exhibit* 4 del ELA ) realizado el 29 de diciembre de 2021 a las 10:00 a.m., que se ocuparon en el Vehículo $16,000.00 en efectivo y tres bolsas transparentes aproximadamente de una (1) libra cada una y que surgía de la Prueba de Campo (*Exhibit* 5 del ELA ) realizada el 29 de diciembre de 202, que el resultado de la prueba obtenida del material ocupado en el Vehículo fue positivo a marihuana y cocaína, por lo que se encontró en el Vehículo material en aparente violación al Artículo 401 de la

Ley de Sustancias Controladas ("LSC"). De igual forma el foro primario destacó que al Apelante no se le sometieron denuncias por violaciones a la LSC, solo por alegadas violaciones a la Ley de Armas de Puerto Rico ("LA") y que al Ángel Abdiel Martínez Cruz se le sometieron denuncias por violaciones a la LSC y LA.

A base de la prueba desfilada el foro primario hizo las siguientes determinaciones sobre hechos probados:

### DETERMINACIONES DE HECHOS

1. El Sr. Luis Ángel Martínez Oliveras trabaja actualmente en construcción. Antes, laboró en sistemas de música profesional por veinte y nueve (29) años.

2. Ángel Abdiel Martínez Cruz (o "Ángel Abdiel"), QEPD, trabajaba entregando ropa a domicilio.

3. **El Sr. Martinez es el dueño del Vehículo objeto del pleito de autos.** Lo compró en los Estados Unidos, y lo envió para Puerto Rico a través de compañía de fletes. Además del Vehículo, el Sr. Martínez tiene un automóvil Toyota Corolla del 1986, y una guagua Hummer, color blanca que mantenía en la marquesina de su residencia.

4. El Sr. Martínez reside en Almirante Norte en Vega Baja. Él es el dueño de dicha casa (o "Propiedad"). La casa tiene sistema de grabación tipo DVR, con 8 cámaras, que le instaló un amigo del Sr. Martínez Oliveras.

5. La casa del Sr. Martínez Oliveras tiene dos plantas. Arriba la propiedad tiene 3 cuartos. Por fuera, la casa tiene una marquesina, y tiene un balconcito arriba. Al frente de la propiedad hay una carretera, y la casa colinda con un solar que le pertenece a puesto de gasolina.

6. **Para la fecha de la confiscación del Vehículo, su hijo Ángel Abdiel vivía con el Sr. Martinez en la Propiedad, ocupando el primer cuarto frente a la Sala.**

7. **El Sr. Martínez autorizaba a su hijo Ángel Abdiel a utilizar el Vehículo.**

8. En la mañana del 29 de diciembre de 2021, agentes de la división de vehículos hurtados de la Policía de Puerto Rico tocaron fuertemente a la puerta de su casa. El Sr. Martínez Oliveras les abrió la puerta de la Propiedad, y los agentes le mostraron una Orden de Allanamiento.

9. El Sgt. Pedro Colón Burgos era el supervisor. Y Agt. Sánchez Rodríguez iba a diligenciar. Los agentes llegaron a la Propiedad a las 7:10 am, dejándose llevar por las descripciones en la Orden de Allanamiento.

10. <u>**La Orden de Allanamiento permitía entrar (allanar) su casa, no al Vehículo.**</u>

11. El Agt. Sánchez Rodríguez les leyó advertencias a ambos (padre e hijo). El agente primero les verbalizó las advertencias, y ambos la firmaron.

12. Los agentes esposaron a Ángel Abdiel y al Sr. Martínez. Le informaron al Sr. Martínez que "Tranquilo nosotros sabemos que usted no tiene que ver con esto, nosotros estamos detrás de su hijo".

13. Los agentes se movieron al segundo piso de la Propiedad. El Agt. Rey Morales los acompañó, y el Agte. Alicea también los acompañó con su can (perro). Ángel Abdiel les identificó su cuarto. Entraron al cuarto de Ángel Abdiel. En el cuarto de Ángel Abdiel, los agentes encontraron armas de fuego, sustancias controladas, pirotecnia (cosas que explotan).

14. Además, los agentes entraron a un cuarto de almacenamiento, y a un tercer cuarto. En ese tercer cuarto encontraron un arma de fuego, que el Sr. Martínez manifestó que le pertenecía a su suegro.

15. Los dos (hijo y padre) estuvieron durante todo el registro en su casa. Los agentes ocuparon un rifle, revolver (que le dio su suegro al Sr. Martínez), 12 cargadores de diferente calibre, cargador tipo tambor, máscaras, abastecedores, municiones, supresor (silenciador), bolsas con polvo blanco (en el cuarto de su hijo, cocaína), picadura de marihuana. Además, los agentes ocuparon máquinas de contar dinero y dinero en efectivo.

16. **Los agentes dejaron al Sr. Martínez en la segunda planta de la Propiedad, y se dirigieron al Vehículo (F-150) que estaba estacionada al otro lado de la carretera.**

17. Específicamente, el Vehículo estaba frente a su casa, en el terreno que le pertenece al puesto de gasolina. El Vehículo lo había estacionado (dejado ahí) Ángel Abdiel.

18. **El Sr. Martínez les dijo a los agentes que el Vehículo era suyo.**

19. **El Sr. Martínez no había autorizado a nadie a inspeccionar el Vehículo, tampoco había firmado ninguno documento sobre eso. Los agentes fueron con Ángel Abdiel hacia el Vehículo.**

20. El Sr. Martínez vio desde el balcón de su casa que llevaron a Ángel Abdiel a donde estaba la guagua.

21. El Sr. Martínez no había autorizado a nadie a entrar a su Vehículo.

22. Ángel Abdiel se quedó fuera del Vehículo, frente a la puerta del conductor.

23. El video presentado en el Juicio capta que en la parte posterior del Vehículo habían unos agentes.

24. Los agentes abren el Vehículo, verifican, y lo vuelven a cerrar. Un agente de camisa negra le saca una foto al Vehículo. Luego los agentes volvieron a la guagua, y la abren nuevamente. Un agente con gorra se mete en el Vehículo.

25. Dentro del Vehículo, en la consola de los dos asientos delanteros, se encontró una bolsa color blanca y se encontraron $16,000.00 en efectivo. Luego el agente se dirigió a caja de herramientas, y vio tres paquetes (grandes, tres libras), con picadura de marihuana.

26. Además, se ocupó otro vehículo en la Propiedad, que luego fue devuelto.

27. Un agente trae un paquete que sacó del Vehículo. El paquete contine picadura de marihuana.

28. Luego los agentes van dentro de la casa. Los agentes ponen picadura de marihuana y un dinero, sobre la mesa, y sacan un documento. Le dicen al Sr. Martínez que (el) tiene que firmar un documento, y él lo firma.

29. Al momento de entrar al Vehículo, el documento (de consentimiento) no tenía la firma del Sr. Martínez.

30. El Sr. Martínez no sabe qué documento firmó. Firmó el documento porque, "Con todos esos agentes, ¿qué voy a hacer?".

31. El Agt, Víctor Agront le realizó la prueba de campo al material ocupado en el Vehículo, que arrojó positivo a marihuana y cocaína. Se llevaron el Vehículo a la división de Vehículos Hurtados.

32. Los agentes sacan al Sr. Martínez de la casa y lo sientan en silla en marquesina. Luego se los llevan a los dos (padre e hijo), los montan en la misma patrulla y los trasladan a Vehículos Hurtados. Se consultó a Fiscalía, y llevaron a padre e hijo al Tribunal.

Conforme a las anteriores determinaciones de hechos el TPI razonó que correspondía evaluar si los problemas procesales del registro al Vehículo, a pesar del material ilegal encontrado, hacían que la confiscación del Vehículo fuera nula. Es decir, si procedía la aplicación de la doctrina del "fruto del árbol ponzoñoso" en un caso de naturaleza civil, según alegó el Apelante para solicitar la devolución del Vehículo.

**El foro primario concluyó que aunque el Registro y Allanamiento del Vehículo por parte de agentes del orden público <u>no fue realizado conforme a derecho</u>, en el caso civil de autos <u>no era de aplicación la doctrina del fruto del árbol ponzoñoso, y que la evidencia obtenida del registro sin orden estaba permitida para efectos de la confiscación (civil) del vehículo.</u>** Razonó el TPI, que toda vez que se incautó material delictivo (positivo a marihuana y cocaína en violación a la LSC) producto de dicho registro, <u>existía un nexo causal entre los delitos y el vehículo ocupado.</u> Razonó además, el foro primario que conforme a la *Ley Uniforme de Confiscaciones*, *supra*, la incautación realizada por el Estado procedía en derecho al no existir violación constitucional; validó la confiscación del Vehículo por los agentes del orden público y declaró No Ha Lugar la Demanda de impugnación de confiscación desestimando la misma.

En desacuerdo, el 9 de junio de 2025 el Apelante solicitó reconsideración.[4] La misma fue denegada por el foro primario mediante *Resolución* de 16 de junio de 2025 y notificada a las partes al día siguiente.[5]

Inconforme, el señor Martínez Oliveras presentó el recurso de epígrafe y señala la comisión de los siguientes errores por parte del foro primario:

A. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL ADMITIR PRUEBA OBTENIDA EN VIOLACIÓN A LA DISPOSICIÓN CONSTITUCIONAL CONTRA REGISTROS Y ALLANAMIENTOS IRRAZONABLES CONSAGRADAS EN LA ENMIENDA CUARTA DE LA CONSTITUCIÓN DE LOS ESTADOS UNIDOS Y EN LA CARTA DE DERECHOS DE LA CONSTITUCIÓN DE PUERTO RICO.

B. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL CONCLUIR QUE EL REGISTRO DEL VEHÍCULO DE MOTOR DEL APELANTE REALIZADO POR LOS FUNCIONARIOS DEL ESTADO FUE RAZONABLE, A PESAR DE HABER RECONOCIDO EXPRESAMENTE EN LA SENTENCIA APELADA QUE NO EXISTIÓ ORDEN DE REGISTRO PREVIA Y QUE EL MATERIAL DELICTIVO FUE INCAUTADO LUEGO DE UN REGISTRO NO CONFORME A DERECHO.

C. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA Y ABUSÓ DE SU DISCRECIÓN AL NEGARSE A SUPRIMIR EL MATERIAL DELICTIVO INCAUTADO, COMO CONSECUENCIA DE UN REGISTRO ILEGAL E IRRAZONABLE, AL AMPARO DE LA REGLA DE EXCLUSIÓN MEJOR CONOCIDA COMO EL FRUTO DEL ÁRBOL PONZOÑOSO, LO QUE HABRÍA IMPEDIDO QUE EL ESTADO ESTABLECIERA EL NEXO REQUERIDO ENTRE LA COMISIÓN DEL DELITO Y EL VEHÍCULO CONFISCADO, VIOLENTANDO ASÍ LOS DERECHOS SUSTANCIALES DEL APELANTE, ESPECIALMENTE SU DERECHO CONSTITUCIONAL A LA PROPIEDAD Y A UN DEBIDO PROCESO DE LEY.

El 17 de julio de 2025 el Apelante presentó *Alegato de Apelación Enmendado.*[6]

El 2 de septiembre de 2025, el Gobierno de Puerto Rico compareció ante nos mediante la presentación de *Alegato.*[7] En esencia, el ELA sostiene que la controversia planteada por el apelante versa sobre la credibilidad que el foro apelado le brindó a los testimonios vertidos ante sí, por lo que el señor Martínez Oliveras, en cumplimiento con la Regla 19 del Reglamento del

---

[4] *Véase* Entrada Núm. 38 SUMAC TPI.

[5] *Véase* Entada Núm. 39 SUMAC TPI.

[6] Entrada Núm. 4 SUMAC TA.

[7] *Véase* Entrada Núm. 11 de SUMAC TA.

Tribunal de Apelaciones, *supra*, debía haber presentado la transcripción del juicio o una exposición narrativa de la evidencia, de modo que nos permitiera evaluar si el TPI sopesó y aquilató correctamente dicha prueba. Razona el ELA que toda vez que el Apelante se limitó a realizar referencia a los testimonios vertidos por los testigos durante el juicio y a las determinaciones de hecho realizadas por el foro primario, al incumplir con lo dispuesto en la mencionada regla, el señor Martínez Oliveras no nos colocó en posición de sopesar la forma en que se llevó a cabo la ocupación del vehículo objeto del caso de epígrafe, y la apreciación de la prueba realizada por el foro primario. Arguye el ELA que ante la ausencia de reproducción de la prueba oral, lo único que hay ante nuestra consideración son meras alegaciones del Apelante, que resultan insuficientes para derrotar la presunción de corrección que cobija a las determinaciones de hechos y conclusiones fundamentadas en la prueba oral y la adjudicación de credibilidad hecha por el foro primario.

En respuesta, el 8 de septiembre de 2025, el Apelante presentó ante nos *Moción de Réplica.*[8] En esencia, **sostiene el Apelante que contrario a lo esbozado por el ELA en ningún momento ha cuestionado las determinaciones de hecho ni la apreciación de la prueba oral efectuada por el TPI**, **por lo que la reproducción de la prueba oral resulta innecesaria para que procedamos a examinar en sus méritos si incidió el foro primario en la aplicación del derecho a los hechos**, **particularmente con respecto a la aplicabilidad de la regla de exclusión mejor conocida como el fruto del árbol ponzoñoso a los casos civiles incoados al amparo de la *Ley Uniforme de Confiscaciones de 2011*.**

**II.**

**A.**

La *confiscación* se perfila como el acto que lleva a cabo el Estado de ocupar toda propiedad que haya sido utilizada en la comisión de determinada conducta delictiva. *Universal Insurance Company y otro v. Estado Libre*

---

[8] *Véase* Entrada Núm. 13 SUMAC TA.

*Asociado de Puerto Rico y otros*, 211 DPR 455 (2023); *Reliable Financial v. ELA,* 197 DPR 289 (2017); *Centeno Rodríguez v. E.L.A.,* 170 DPR 907 (2007); *First Bank v. E.L.A.,* 164 DPR 835 (2005). [L]a confiscación representa una privación de la propiedad que debe satisfacer las garantías mínimas del debido proceso de ley. Además, representa una excepción al mandato constitucional que prohíbe que el Estado tome propiedad privada para fines públicos sin justa compensación. *Universal Insurance Company y otro v. Estado Libre Asociado de Puerto Rico y otros*, supra; *Reliable v. Depto. Justicia y ELA*, 195 DPR 917 (2016); *Coop. Seg. Múlt. v. ELA*, 180 DPR 655 (2011). La potestad gubernamental de apropiarse de bienes relacionados a una actividad ilícita es un procedimiento estatutario que actúa a manera de una sanción adicional a aquella impuesta por razón de la conducta punible que la motiva. *MAPFRE v. ELA,* 188 DPR 517 (2013); *Coop. Seg. Múlt. v. E.L.A.,* supra. Se presume que la confiscación es legal y correcta, independientemente de cualquier procedimiento penal, administrativo u otro procedimiento relacionado a los mismos hechos. Por consiguiente, le corresponde al demandante el peso de la prueba para derrotar dicha presunción. *Universal Insurance Company v. Estado Libre Asociado de Puerto Rico y otros*, supra. Por tanto, el ordenamiento vigente expresamente estatuye un margen de independencia entre la confiscación y los trámites criminales o administrativos que le sean inherentes.

Nuestro ordenamiento reconoce dos (2) variantes de la confiscación: la confiscación *in personam* y la confiscación *in rem*. La confiscación in *personam* se perfila como una acción de índole penal, pues se produce como resultado de un veredicto de culpabilidad en un procedimiento criminal. En ese caso, la confiscación representa una parte de la sanción que se le impone al ofensor. Por otra parte, la confiscación *in rem* parte de la premisa fundamental de que esta es una acción distinta y separada de cualquier otro procedimiento penal, o sea, dirigido contra la persona. Es decir, esta acción, por ficción legal, se insta contra la cosa misma y no contra su dueño, poseedor, encargado u otra persona con interés legal sobre ella." (citas

omitidas). *Ins. Universal y Otro* v. *ELA y Otros*, 211 DPR 455, 463-464 (2023).

El proceso de confiscación, regido por la Ley Uniforme de Confiscaciones, Ley 119-2011*,* 34 LPRA sec. 1724 *et seq.,* es uno civil de naturaleza *in rem*. *Reliable Financial v. ELA,* supra. Por tanto, el mismo se ejecuta contra la cosa misma y no en cuanto a su propietario, poseedor, encargado o persona que respecto a ella ostente algún interés legal. *Doble Seis Sport TV v. Dpto. Hacienda*, 190 DPR 763 (2014); *MAPFRE v. ELA,* supra; *B.B.V. v. E.L.A.*, 180 DPR 681 (2011); *Coop. Seg. Múlt. v. E.L.A,* supra. Lo anterior obedece a que "[l]a confiscación que lleva a cabo el Estado, se basa en la ficción legal de que la cosa es la ofensora primaria." Exposición de Motivos, Ley 119-2011, *supra*; *Reliable Financial v. ELA,* supra.

En *Universal Ins. y Otro* v. *ELA y otros*, supra, a la página 467, se reafirma la naturaleza *in rem* de las confiscaciones, independiente de cualquier otra acción de naturaleza penal, administrativa o de cualquier otra naturaleza. La confiscación en su modalidad civil parte de la ficción jurídica de que el bien confiscado en sí mismo es el ofensor primario y que, este, como medio o producto de la ofensa, es merecedor de responsabilidad independientemente del autor del delito. *Bco. Bilbao Vizcaya et al.* v. *ELA et al.*, 194 DPR 116, 156 (2015).

Para que una confiscación *in rem* o civil sea procedente deben satisfacerse dos (2) requisitos primordiales: 1) debe existir prueba suficiente y preponderante de que se ha cometido un delito y 2) debe demostrarse que existe un nexo entre la comisión del delito y la propiedad confiscada. *Universal Insurance Company y otro v. Estado Libre Asociado de Puerto Rico y otros*, supra; *Figueroa Santiago et als. v. ELA*, 207 DPR 923, 929-30 (2021). Así, "[l]os procedimientos de confiscación civil pueden llevarse a cabo y culminarse antes de que se acuse, se declare culpable o se absuelva al acusado. Incluso, pueden llevarse a cabo aun cuando no se haya presentado algún cargo […]." Exposición de Motivos, Ley 119-2011, *supra*.

Lo crítico, es que el Estado demuestre que la propiedad confiscada se utilizó en una actividad delictiva. *Universal Insurance Company v. Estado Libre Asociado de Puerto Rico y otros*, supra.

El Tribunal Supremo de Puerto Rico ha reconocido que las disposiciones de la Ley 119-2011, *supra,* pretenden procurar la celeridad de los procesos conducentes a la confiscación de determinada propiedad, ello mediante la implantación de un trámite expedito "con requisitos aplicables tanto al Estado, como a las partes con interés en los bienes confiscados." *Reliable Financial v. ELA,* supra, pág. 298. De este modo, si bien el Gobierno viene llamado a actuar de manera oportuna para validar su actuación, las partes que interesen impugnar un proceso de confiscación igualmente están obligadas a actuar con premura a tal efecto. *Íd.*

En lo pertinente, el estado de derecho impone al Estado el deber de notificar el hecho de una confiscación. Dicha exigencia cumple con el propósito de salvaguardar los derechos de las partes interesadas en la propiedad confiscada, de modo que tengan la oportunidad para presentar sus defensas. *Reliable v. Depto. Justicia y ELA,* 195 DPR 917 (2016). confiscada. Es preciso destacar, que es al Gobierno, y no a la parte que impugna la incautación, a quien le corresponde demostrar que se cometió un delito y el nexo con la propiedad. *Rodríguez Ramos* v. *ELA*, 174 DPR 194, 203 (2008).

En cuanto a los bienes sujetos a confiscación, el Artículo 9 de la Ley de Confiscaciones, 34 LPRA sec. 1724f, especifica lo siguiente:

> Estará sujeta a ser confiscada, a favor del Gobierno de Puerto Rico, toda propiedad que resulte, sea producto o se utilice, durante la comisión de delitos graves y de aquellos delitos menos graves en los que por ley se autorice la confiscación, cuando tales delitos graves y menos graves se encuentren tipificados en el Código Penal de Puerto Rico, en las leyes de sustancias controladas, de armas y explosivos, en las leyes contra el crimen organizado, en las leyes de juegos prohibidos, bebidas alcohólicas, leyes fiscales, leyes contra la apropiación ilegal de vehículos, leyes de vehículos y tránsito, y de embarcaciones; así como en otras leyes y en aquellos estatutos confiscatorios en los que por ley se autorice la confiscación. Toda propiedad que esté sujeta a una sentencia de confiscación que así lo autorice, será confiscada a favor del Gobierno de Puerto Rico.

En lo pertinente a vehículos de motor, el Tribunal Supremo ha resuelto que la confiscación de un vehículo de motor constituye una privación de la

propiedad que debe satisfacer las garantías mínimas del debido proceso de ley. *Reliable* v. *Depto. Justicia y ELA*, 195 DPR 917, 924-925 (2016). Por tal razón, una confiscación realizada conforme a derecho constituye una excepción al mandato constitucional que impide tomar propiedad privada para fines públicos sin justa compensación. *Coop. Seg. Múlt.* v. *ELA*, 180 DPR 655, 662-663 (2011). A esos fines el Tribunal Supremo ha establecido como principio rector que los estatutos relacionados con confiscaciones deben ser interpretados de manera restrictiva de suerte que resulten consistentes con la justicia y los dictados de la razón; ante la naturaleza punitiva de las confiscaciones, estas no son favorecidas por las cortes. *Coop. Seg. Múlt.* v. *ELA*, *supra*, a la página 668.

**B.**

La Sección 10 del Artículo II, de la Constitución del Estado Libre Asociado de Puerto Rico, 1 LPRA, ed. 1999, página 311, establece en lo pertinente, lo siguiente:

> No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables. Sólo se expedirán mandamientos autorizando registros, allanamientos o arrestos por autoridad judicial, y ello únicamente cuando exista causa probable apoyada en juramento o afirmación, describiendo particularmente el lugar a registrarse, y las personas a detenerse o las cosas a ocuparse. Evidencia obtenida en violación de esta sección será inadmisible en los tribunales."

El Tribunal Supremo de Puerto Rico reconoció que nuestra carta de Derechos tiene un alcance mayor de protección que la Constitución federal, "por lo que la excepción de registro sin una orden, por ser incidental al arresto, en Puerto Rico ha sido objeto de una interpretación de factura más ancha". *Pueblo* v. *Díaz, Bonano*, 176 DPR 601, 622 (2009). De igual forma, el Tribunal Supremo ha reiterado la norma de que toda incautación o registro que se realice sin orden judicial previa se presume irrazonable y, por lo tanto, inválido. *E.L.A. v. Coca Cola Bott. Co.*, 115 DPR 197 (1984). La presunción de invalidez obliga al Ministerio Público a presentar evidencia para demostrar la legalidad y razonabilidad de la actuación del Estado. En estos casos, el Ministerio Público debe rebatir la presunción de invalidez demostrando la existencia de alguna de las circunstancias excepcionales

que justifican actuar sin una orden judicial previa. *Pueblo v. Blase Vázquez,* 148 DPR 618 (1999).

La incautación sin orden judicial previa constituye *prima facie* un registro ilegal, *Pueblo v. Espinet,* 110 DPR 70 (1980). Compete al Ministerio Público rebatir tal presunción, ya que tiene la carga probatoria de demostrar la legalidad y razonabilidad de la actuación del Estado. *Pueblo v. Blase Vázquez, supra.* En los casos en que se determine que la evidencia incautada fue obtenida en violación al mandato constitucional, el tribunal deberá suprimir la evidencia obtenida. En consecuencia, esta no será admisible en los tribunales como prueba sustantiva de la comisión de un delito. *Íd.*

Ahora bien, nuestro Tribunal Supremo ha identificado varias situaciones excepcionales en las que no es indispensable la orden judicial previa al registro por no existir una expectativa razonable de intimidad. "[L]a jurisprudencia ha codificado, por así decirlo, una serie de instancias en las que es razonable registrar sin orden o en las que ni siquiera hay un "registro" que active la protección constitucional." E.L. Chiesa Aponte, *Procedimiento Criminal y la Constitución*: *Etapa Investigativa*, Ediciones Situm, 2017, San Juan, a la página 374. Entre estas, se encuentran, entre otras situaciones, un registro incidental a un arresto legal y un registro consentido voluntariamente de forma expresa o implícita. *Pueblo* v. *Báez López*, 189 DPR 918, 930-932 (2013).

Esta excepción del registro consentido "se configura en virtud de la facultad que posee el titular de la protección constitucional para renunciarla. *Pueblo* v. *Dolce*, 105 DPR 422 (1976). Dicha renuncia, "se deduce del acto del acusado de permitir la entrada del agente, o cuando se puede establecer que hubo una invitación implícita de su parte.". *Pueblo* v. *Seda*, 82 DPR 719, 728-729 (1961). Sin embargo, la renuncia debe ser voluntaria. *Pueblo* v. *Miranda Alvarado*, 143 DPR 356, 364 (1997); *Pueblo en interés menor N.O.R.*, 136 DPR 949, 964 (1994). Ello implica que en el ánimo de la persona no puede mediar coacción directa o indirecta. *Pueblo* v. *Narváez* Cruz, 121

DPR 429, 445 (1988). El examen de la validez del consentimiento prestado para realizar un registro "es una cuestión de hecho que se determina haciendo un examen cuidadoso de la totalidad de las circunstancias que rodean el caso. *Pueblo* v. *Miranda Alvarado*, *supra, pág. 364*.

La regla de exclusión conocida como la doctrina del "fruto del árbol ponzoñoso" fue establecida por el Tribunal Supremo federal hace más de cien años atrás en *Silverthorne Lumber Co.* v. *United States*, 251 US 385 (1920), en el contexto de exclusión de evidencia derivada de una violación a la Cuarta Enmienda de la Constitución de Estados Unidos. E.L. Chiesa Aponte, op. cit., a las págs. 276-277. En Puerto Rico, los miembros de la Convención Constituyente incorporaron la regla de exclusión creada por el Tribunal Supremo Federal en *Silverthorne Lumber Co.* v. *United States*, *supra*, expresamente al texto de nuestra Constitución; así, y en lo pertinente, la Sección 10 de su Artículo II dispone claramente que la "evidencia obtenida en violación a esta sección será inadmisible en los tribunales". *Pueblo* v. *Fernández Rodríguez*, 188 DPR 165, 176 (2013). Así en *Pueblo* v. *Fernández Rodríguez*, *supra*, a la pág.181, el Tribunal Supremo expuso lo siguiente:

> La doctrina del "fruto del árbol ponzoñoso" se ha utilizado por este Tribunal para suprimir evidencia obtenida como fruto de registros ilegales, arrestos ilegales y detenciones ilegales de un vehículo. Además, **hemos suprimido confiscaciones producto de registros ilegales**, confesiones producto de detenciones y registros ilegales e identificaciones de acusados producto de detenciones ilegales."
>
> (Citas omitidas y Énfasis suplido). *Íd.*, a la página 181.

En *Del Toro Lugo* v. *E.L.A.*, 136 DPR 973 (1994), nuestro Tribunal Supremo extendió la aplicación de la referida doctrina de exclusión del fruto del árbol ponzoñoso en Puerto Rico, a los pleitos civiles de confiscación de vehículos de motor al amparo de la derogada Ley Uniforme de Confiscaciones de 1988, *supra*. Sobre estos extremos en Del Toro Lugo v. E.L.A., *supra*, a las páginas 995-997, el Tribunal Supremo dispuso expresamente lo siguiente:

El Tribunal Supremo federal se enfrentó a esta interrogante en el caso de Plymouth Sedan v. Pennsylvania, 380 U.S. 693 (1965). En dicho caso se señaló que sería una anomalía permitir la utilización de evidencia obtenida de forma ilegal en el pleito de confiscación para probar la comisión del delito cuando esta misma evidencia tuvo que ser suprimida y no pudo ser utilizada para probar el delito en la acción penal por imperativo constitucional. Plymouth Sedan v. Pennsylvania, supra, pág. 701. Al respecto se resolvió que bajo la Decimocuarta Enmienda de la Constitución federal, L.P.R.A., Tomo 1, es obligatorio para los estados aplicar la regla de exclusión de evidencia sentada en el caso. Mapp v. Ohio, 367 U.S. 643 (1961), en los procesos de confiscación respecto a la evidencia obtenida en violación a la Cuarta Enmienda de la Constitución federal, supra. Plymouth Sedan v. Pennsylvania, supra, pág. 702. Véase, también, W.R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment, 2da ed., Minnesota, Ed. West Publishing Co., 1987, Vol. 1, Sec. 1.7(a).

A igual conclusión llegamos al analizar la situación de acuerdo con los preceptos de la Constitución del Estado Libre Asociado de Puerto Rico. El Art. II, Sec. 10 de nuestra Constitución, supra, específicamente declara que la evidencia obtenida en violación a ésta no será admisible en los tribunales. La exclusión de la evidencia ilegalmente obtenida se origina en consideraciones de política pública fundamentales al ordenamiento democrático establecido por la Constitución. […]

**A tales efectos, la aplicación de la regla de exclusión no se limita a causas criminales, sino que se extiende a acciones administrativas y civiles en que se cumplen sus propósitos de política pública o en que el Gobierno sea parte**. Véanse: Pagán Hernández v. U.P.R., 107 DPR 720 (1978); E.L.A. v. Coca Cola Bott. Co., 115 DPR 197 (1984); Toll y Sucn. Rivera Rojas v. Adorno Medina, supra; LaFave, op. cit., págs. 144-145.

**Es más que evidente que la regla de exclusión del Art. II, Sec. 10 de nuestra Constitución, supra, aplica a los pleitos de confiscación. Se trata de un pleito en el cual se impugna la incautación, sin compensación alguna, de una propiedad por parte del Estado a base de la obtención ilegal de evidencia por parte de los propios agentes del Estado en violación de los derechos constitucionales de los ciudadanos**. **El resolver lo contrario constituiría una invitación al Estado a violentar las garantías constitucionales de los ciudadanos, puesto que independientemente de que se obtenga una convicción penal, se estaría imponiendo una sanción económica civil en beneficio del Estado, en ocasiones mayor a la pena establecida a manera de multa por el delito en particular. Claramente estaríamos permitiendo que el Estado se beneficie de sus propios actos ilícitos**." (énfasis en el original). *Del Toro Lugo v. E.L.A., supra*, a las páginas 995-997.

**III.**

Mediante el recurso de epígrafe el señor Martínez Oliveras apela la Sentencia emitida por el foro primario el 23 de mayo de 2025, que declaró No Ha Lugar la Demanda de impugnación de confiscación presentada por el Apelante, en la que este impugnó la confiscación realizada por el Estado bajo el fundamento de inexistencia de motivos fundados sobre la comisión

de un delito para intervenir con el vehículo ocupado, y por el incumplimiento con el Artículo 13 de la Ley Núm. 119-2011, 34 LPRA sec. 1724j.

El señor Martínez Oliveras argumenta que el Tribunal de Primera Instancia erró al desestimar la demanda instada por este, pues a su entender, del testimonio ofrecido tanto por el Apelante como por el agente Sánchez Rodríguez surge la supuesta ilegalidad de la ocupación del vehículo en controversia y como tal debe declararse nula la confiscación.

En síntesis, sostiene el Apelante que incidió el foro primario al concluir que al amparo de la Ley de Confiscaciones, *supra*, para efectos de la confiscación civil, no aplica la doctrina del fruto del árbol ponzoñoso ya que existía un nexo causal entre los delitos y el vehículo ocupado que validó la confiscación aun cuando determinó como hecho probado que el registro del vehículo no fue conforme a derecho.

Por su parte la oposición del ELA se concentra en una solicitud de desestimación por alegado incumplimiento del Apelante con las normas reglamentarias de este Honorable Tribunal, particularmente con la Regla 19 del Reglamento del Tribunal de Apelaciones, según enmendado, la cual rige el proceso cuando la parte apelante impugna la suficiencia de la prueba testifical o la apreciación errónea de esta por parte del tribunal apelado. 4A LPRA Ap. XXII-B R. 19. Sobre esos extremos el ELA expresó que "la parte apelante, simplemente, se limitó a realizar referencia de los testimonios vertidos por los testigos durante el juicio y a las determinaciones de hecho realizadas por el foro primario".[9]

Como cuestión de umbral, es preciso destacar que como bien señala el ELA el Apelante se limitó a realizar referencia de los testimonios vertidos por los testigos durante el juicio y a las determinaciones de hecho realizadas por el foro primario. Sin embargo, el Apelante **nunca ha cuestionado o impugnado la apreciación de la prueba oral por parte del tribunal de instancia**; todo lo contrario, en el *Alegato de Apelación Enmendado* fueron incorporadas no solamente las treinta y dos (32) determinaciones de hecho

---

[9] *Véase Alegato*, pág. 14. Entrada Núm. 11 de SUMAC TA.

realizadas por el foro primario de forma íntegra, sino que también se adoptaron los nueve (9) hechos materiales que las partes estipularon en el Informe de Conferencia.[10] De lo anterior se desprende, que contrario al razonamiento del ELA, de conformidad con los errores levantados la Apelación, el Apelante no tiene la exigencia reglamentaria de presentar la transcripción de la prueba oral como condición previa para que este Honorable Tribunal atienda en sus méritos la controversia de derecho que nos ocupa.

De los errores levantados por el Apelante en su *Alegato de Apelación Enmendado* se desprende que los señalamientos de error van dirigidos expresamente a controvertir las conclusiones de derecho del foro primario en la sentencia apelada y no las determinaciones de hecho ni la apreciación de la prueba oral. En dicha Sentencia, el TPI, a pesar de determinar que no existía orden judicial previa para el registro del vehículo, y que el registro realizado no fue conforme a derecho porque el Estado no obtuvo válidamente el consentimiento previo del Apelante para llevarlo a cabo, **como cuestión de derecho,** en lo pertinente a la evidencia incautada **el foro primario descartó aplicar la doctrina de fruto del árbol de ponzoñoso a los casos civiles incoados al amparo de la Ley Uniforme de Confiscaciones 2011**, según enmendada. y declaró no ha lugar la Demanda de impugnación de confiscación presentada por el señor Martínez Cruz.

Toda vez que las conclusiones de derecho en la sentencia apelada son revisables en su totalidad, entendemos que el Apelante no tiene ninguna obligación de solicitar y presentar la reproducción de la prueba oral cuando no se ha cuestionado ni impugnado las determinaciones de hecho del foro primario, por lo que procedemos a resolver si incidió el TPI al . **descartar aplicar la doctrina de fruto del árbol de ponzoñoso a los casos civiles incoados al amparo de la *Ley Uniforme de Confiscaciones 2011***, según enmendada.

---

[10] *Véase Alegato de Apelación* Enmendado, págs. 4-9, Entrada Núm. 4 SUMAC TA.

Surge de los hechos probados ante el foro primario que el Apelante no autorizó el registro de su vehículo de motor mientras se encontraba arrestado dentro del interior de su residencia de dos niveles. En su Sentencia, el TPI reconoció además, que el agente de la policía no solo procedió a efectuar el registro del interior del vehículo de motor sin orden de registro a pesar del reparo oportuno levantado por el Apelante, sino que resultó reprochable que la hoja de consentimiento de registro fue firmada por el apelante luego de que los agentes del orden público habían abierto e inspeccionado el vehículo. Concurrimos con el TPI en que la conducta incurrida el presente caso por el agente Sánchez Rodríguez, según plasmada durante su testimonio, demostró **que el registro y la ocupación del vehículo fue contraria a derecho**.

Sin embargo, el TPI concluye que el registro del vehículo por parte de la policía, sin el consentimiento de su dueño registral, aunque **no fue realizado conforme a derecho**, no fue uno irrazonable, y acto seguido, agrega que la evidencia obtenida del registro sin orden es permitida para efectos de la confiscación civil del vehículo. Así, concluye el foro primario que en el caso civil de autos no es de aplicación la doctrina del fruto del árbol ponzoñoso. Razonó el TPI que toda vez que se incautó material delictivo (positivo a marihuana y cocaína en violación a la LSC) producto de dicho registro, para efectos de la confiscación civil, <u>**existía un nexo causal entre los delitos y el vehículo ocupado.**</u>

Concluimos que el foro primario incurrió en un grave error de derecho al negarse a suprimir la única evidencia incautada por el Estado durante el registro ilegal del vehículo de motor del Apelante, **a pesar de haber reconocido en la Sentencia apelada que no existía orden judicial previa para registrar el vehículo de motor sino la vivienda y que para el registro realizado tampoco se obtuvo válidamente el consentimiento previo del Apelante para llevarlo a cabo.** Por todo lo anterior es forzoso concluir que ante la ausencia de excepciones que justifiquen un registro sin orden previa, **la evidencia obtenida en el presente caso es fruto del árbol**

**ponzoñoso toda vez que hubo un registro sin orden del vehículo, sin que se configuraran alguna de sus excepciones para validarlo.**

De las determinaciones de hechos del foro primario se desprende que las actuaciones del Estado, representado por los Agentes de la Policía de Puerto Rico constituyen un registro ilegal, en violación a la Cuarta Enmienda de la Constitución de los Estados Unidos de América y la Sección 10 del Articulo II de la Constitución del Estado Libre Asociado de Puerto Rico. Además, sus actuaciones fueron irrazonables pues no cumplen con ninguna de las excepciones a dicha regla de exclusión. Es por ello que la evidencia obtenida a raíz del registro ilegal del vehículo el Apelante, son fruto del árbol ponzoñoso y debió suprimirse. Incide el foro primario al concluir como cuestión de derecho, que aun así para efectos de la confiscación civil, al amparo de la Ley de Confiscaciones, *supra*, no aplica la doctrina del fruto del árbol ponzoñoso porque existía un nexo causal entre los delitos y el vehículo ocupado que valida la confiscación .

Con estos antecedentes concluimos que incidió el foro primario al negarse a suprimir la evidencia y establecer un nexo causal entre evidencia obtenida tras un registro ilegal, fruto del árbol ponzoñoso, a los fines de validar la confiscación civil del vehículo del Apelante. Como cuestión de derecho, l**a conclusión de que la doctrina del árbol ponzoñoso no aplica a casos de confiscación no encuentra apoyo ni fundamentos en nuestro ordenamiento ni en la doctrina vigente, por lo que** incidió el TPI al desestimar la Demanda de impugnación presentada por el Apelante.

**IV.**

Por los fundamentos anteriormente expuestos, los cuales se hacen formar parte de esta Sentencia, revocamos la Sentencia apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La jueza Álvarez Esnard disiente con voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| | | |
|---|---|---|
| LUIS ÁNGEL MARTÍNEZ OLIVERAS/ÁNGEL ABDIEL MARTÍNEZ CRUZ<br><br>Apelantes<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO POR CONDUCTO DEL HONORABLE DOMINGO EMANUELLI HERNÁNDEZ, SECRETARIO DE JUSTICIA<br><br>Apelados | TA2025AP00137 | *APELACIÓN* procedente del Tribunal de Primera Instancia Sala de Bayamón<br><br>Caso Núm. BY2022CV00601<br><br>Sobre:<br><br>Impugnación de Confiscación |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Alvarez Esnard, y la jueza Prats Palerm

## VOTO DISIDENTE

En San Juan, Puerto Rico, a 23 de septiembre de 2025.

Disiento de la determinación de este panel sobre que no es necesario la reproducción de la prueba oral para determinar el presente caso. Es nuestra contención que esta *Curia* no está en posición para atender los errores señalados en el presente recurso, por no constar con la reproducción de la prueba oral. De hecho, en el presente caso, este panel debió haber interpelado a la parte Apelante conforme a la Regla 19 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas.* Reglamento TA, 2025 TSPR 42, 215 DPR __ (2025), sobre si va a presentar o no un método de reproducción oral. De no hacerlo en el término dispuesto, y luego del apercibimiento, se entiende que la parte renuncia a su derecho a someter la misma. Sin embargo, esto no ocurrió en el presente caso. Entendemos respetuosamente que se trata de un asunto de apreciación de prueba, por tanto se debió apercibir a la parte Apelante de su derecho. No haberse apercibido a la Apelante

conforme a nuestro Reglamento constituye una violación al debido

proceso de Ley de la parte Apelante.  Por tanto, disiento.


                            Alicia Álvarez Esnard
                            JUEZA DE APELACIONES